# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00481-CV

**Appellants, Susan Combs, Successor to Carole Keeton Strayhorn,
Comptroller of Public Accounts of the State of Texas, and Greg Abbott,
Attorney General of the State of Texas// Cross-Appellant, Evercom Systems, Inc.**

**v.**

**Appellee, Evercom Systems, Inc.// Cross-Appellees, Susan Combs, Successor to
Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas,
and Greg Abbott, Attorney General of the State of Texas**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-05-003910, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Comptroller[1] appeals the district court's judgment finding that Evercom Systems,
Inc., was not subject to the gross receipts assessment ("GRA") imposed by the legislature to fund the
operations of the Texas Public Utility Commission from September 1, 1997, through December 31,
1998. Evercom cross-appeals the district court's judgment finding that Evercom was subject to the
GRA from April 1, 1997, to August 31, 1997. The question presented involves a matter of statutory
construction. Because we conclude that the plain language of the relevant statutes subjects Evercom
to liability for the GRA during the entire period of April 1, 1997, through December 31, 1998, we

---

[1] Because the interests of the Comptroller of Public Accounts and the Attorney General are
aligned, we refer to them collectively as the "Comptroller."

hold that the district court properly held that Evercom was subject to the GRA from April 1, 1997, to August 31, 1997, and we affirm that portion of the district court's judgment. We conclude that the district court erred in finding that Evercom was not subject to the GRA from September 1, 1997, to December 31, 1998. Thus, we reverse that portion of the district court's judgment and render judgment that Evercom was subject to the GRA from September 1, 1997, through December 31, 1998.

## BACKGROUND

Evercom is a non-dominant interexchange, or long-distance, telecommunications carrier. The Comptroller audited Evercom for the period of April 1, 1997, through December 31, 1998, and determined that Evercom owed $45,827.59 for the GRA. Evercom paid this amount under protest and filed suit in district court to recover a refund. The district court granted summary judgment finding that Evercom was subject to the GRA from April 1, 1997, through August 31, 1997, but that Evercom was not subject to the GRA from September 1, 1997, through December 31, 1998. The parties have stipulated that the district court's judgment entitles Evercom to a refund in the amount of $44,337.24, plus pro rata statutory interest.

The Comptroller appeals the district court's judgment that Evercom was not subject to the GRA from September 1, 1997, through December 31, 1998. Evercom has cross-appealed the district court's judgment that Evercom was subject to the GRA from April 1, 1997, to August 31, 1997.

**ANALYSIS**

The sole issue presented in this appeal is whether Evercom was subject to the GRA during the relevant audit period from April 1, 1997, through December 31, 1998. There is no dispute that Evercom is a non-dominant interexchange telecommunications carrier. Evercom argues that, as a non-dominant interexchange telecommunications carrier, it is not a "public utility" within the meaning of the relevant statutes and, therefore, is not subject to the GRA. The Comptroller counters that the legislature intended to subject all public utilities within the commission's jurisdiction, including non-dominant interexchange telecommunications carriers, like Evercom, to liability for the GRA.

***Standard of Review***

In this tax refund suit, we review the district court's grant of summary judgment *de novo*. *See* Tex. Tax Code Ann. §§ 112.054, .154 (West 2001); Tex. Gov't Code Ann. § 2001.173 (West 2000); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). More importantly, because the only question before us concerns a matter of statutory construction, we review the district court's construction of the relevant statutes *de novo*. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).

Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *Id.* We must construe statutes as written and, if possible, determine legislative intent "first and foremost" from the statute's language. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006); *see also Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). We also consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d

486, 493 (Tex. 2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999); *Morrison*, 699 S.W.2d at 208. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). We give effect to all words in a statute and, if possible, do not treat any statutory language as mere surplusage. *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006).

### *The Gross Receipts Assessment*

We provide a brief overview of the history of the GRA to give context to the parties' arguments. The legislature first imposed the GRA in 1975 under section 78 of the former Public Utility Regulatory Act ("PURA"), Texas Revised Civil Statutes Ann. art. 1446c-0. *See* Act of June 21, 1975, 64th Leg., R.S., ch. 721, § 78, 1975 Tex. Gen. Laws 2327, 2350. In 1995, the legislature enacted a comprehensive revision to PURA but retained the GRA to help fund commission operations. *See* Public Utility Regulatory Act of 1995, 74th Leg., R.S., ch. 9, § 1, sec. 1.351, 1995 Tex. Gen. Laws 31, 44 ("PURA 1995") (now codified at Tex. Util. Code Ann. § 16.001 (West 1998)). As provided in section 1.351(a) of PURA 1995,

> An assessment [wa]s imposed on each public utility within the commission's jurisdiction, including interexchange telecommunications carriers . . . equal to one-sixth of one percent of its gross receipts from rates charged the ultimate consumers in Texas for the purpose of defraying the costs and expenses incurred in the administration of this Act.

*Id.* sec. 1.351(a), 1995 Tex. Gen. Laws 31, 44. Section 1.351(c) further provided,

4

> Nothing in this Act or any other provision of law shall prohibit interexchange telecommunications carriers who do not provide local exchange telephone service from collecting the fee imposed under this Act as an additional item separately stated on the customer bill as "Utility Gross Receipts Assessment."

*Id.* sec. 1.351(c), 1995 Tex. Gen. Laws 31, 44. The PURA 1995 amendments charged the Comptroller with responsibility to collect the GRA but required the commission to keep all accounting records required by the Comptroller. *Id.* secs. 1.354, .356, 1995 Tex. Gen. Laws 31, 44, 45 (now codified at Tex. Util. Code Ann. §§ 16.004, .042 (West 1998)).

Also enacted by the legislature in 1995 was House Bill 2128, which amended PURA 1995 in various respects. Act of May 12, 1995, 74th Leg., R.S., ch. 231, §§ 1-55, 1995 Tex. Gen. Laws 2017, 2017-88 ("House Bill 2128"). House Bill 2128 amended section 1.004 of PURA 1995 to provide that the terms "public utility" or "utility" have the meaning assigned by section 2.001 or 3.002 of the Act. *Id.* § 3, sec. 1.004, 1995 Tex. Gen. Laws 2017, 2017. In general, section 3.002(9) of House Bill 2128 defined the terms "public utility" or "utility" to include those entities owning or operating equipment or facilities for the conveyance, transmission, or reception of communications over a telephone system as a dominant carrier, which the statute referred to as a "telecommunications utility." *Id.* § 7, sec. 3.002(9), 1995 Tex. Gen. Laws 2017, 2020. Although section 3.002(9) excluded various entities regulated by the Federal Communications Commission and any entity who provided service only to itself, its employees, or its tenants from the definition of "public utility" or "utility," section 3.002(9) specifically included interexchange telecommunications carriers as "telecommunications utilities" falling within the definition of

5

"public utility" or "utility."[2]  *Id.*  Most importantly, however, House Bill 2128 did not amend the

---

[2]  Section 3.002(9) of House Bill 2128 provided in full:

"Public utility" or "utility" means any person, corporation, river authority, cooperative corporation, or any combination thereof, other than a municipal corporation, or their lessees, trustees, and receivers, now or hereafter owning or operating for compensation in this state equipment or facilities for the conveyance, transmission, or reception of communications over a telephone system as a dominant carrier (hereinafter "telecommunications utility").  A person or corporation not otherwise a public utility within the meaning of this Act may not be deemed such solely because of the furnishing or furnishing and maintenance of a private system or the manufacture, distribution, installation, or maintenance of customer premise communications equipment and accessories.  Except as provided by Sections 3.606 and 3.608 of this Act, nothing in this Act shall be construed to apply to companies whose only form of business is being telecommunications managers, companies that administer central office based or customer based PBX type sharing/resale arrangements as their only form of business, telegraph services, television stations, radio stations, community antenna television services, radio telephone services that may be authorized under the Public Mobile Radio Services rules of the Federal Communications Commission, or commercial mobile service providers, under Sections 153(n) and 332(d), Communications Act of 1934 (47 U.S.C. Section 151 et seq.), Federal Communications Commission rules, and the Omnibus Budget Reconciliation Act of 1993, other than such radio telephone services provided by wire line telephone companies under the Domestic Public Land Mobile Radio Service and Rural Radio Service rules of the Federal Communications Commission. Interexchange telecommunications carriers (including resellers of interexchange telecommunications services), specialized communications common carriers, other resellers of communications, other communications carriers who convey, transmit, or receive communications in whole or in part over a telephone system, providers of operator services as defined in Section 3.052(a) of this Act (except that subscribers to customer owned pay telephone service may not be deemed to be telecommunications utilities), and separated affiliate and electronic publishing joint ventures as defined by Subtitle L of this title are also telecommunications utilities, but the commission's regulatory authority as to them is only as hereinafter defined. The term "public utility" or "utility" does not include any person or corporation not otherwise a public utility that furnishes the services or commodity described in this section only to itself, its employees, or its tenants as an incident of such employee service or tenancy, when such service or commodity is not resold to or used by others.

6

legislature's imposition of the GRA against interexchange telecommunications carriers.

When the Public Utility Regulatory Act was codified into the Texas Utilities Code in 1997, the legislature retained those provisions relating to the GRA as they existed under PURA 1995. *See* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, secs. 16.001-.042, 1997 Tex. Gen. Laws 713, 742-44. The 1997 codification took effect on September 1, 1997. *Id.* § 11, 1997 Tex. Gen. Laws 713, 1018. As provided in section 16.001(a), an assessment was still imposed upon each public utility within the commission's jurisdiction, including interexchange telecommunications carriers, to defray the costs of administering the code. Tex. Util. Code Ann. § 16.001(a) (West 1998 & Supp. 2006). Section 16.001(c) continued the ability of interexchange telecommunications carriers to collect the GRA as a separate line item on consumers' bills. *Id.* § 16.001(c). Section 16.004 required the Comptroller to collect the GRA, and section 16.042 required the commission to keep all necessary accounting records required by the Comptroller. *Id.* §§ 16.004, .042 (West 1998).

### *Statutory Construction*

#### 1. *PURA 1995, as amended by House Bill 2128*

We begin our statutory analysis with PURA 1995—the law in effect at the start of the relevant audit period from April 1, 1997, through December 31, 1998. The legislature imposed the GRA in section 1.351 of PURA 1995, and the plain language of section 1.351 applied to "each public utility within the commission's jurisdiction, *including interexchange telecommunications carriers*." *See* PURA 1995, sec. 1.351(a), 1995 Tex. Gen. Laws 31, 44 (emphasis added). Moreover, in section 1.351(c), the legislature specified that nothing in PURA 1995 "*or any other*

7

*provision of law*" prohibited interexchange telecommunications carriers who do not provide local exchange telephone service from collecting the GRA.[3]  *Id.* sec. 1.351(c), 1995 Tex. Gen. Laws 31, 44 (emphasis added).

Evercom does not dispute that it is an interexchange telecommunications carrier. Rather, Evercom argues that the phrase "including interexchange telecommunications carriers" in section 1.351(a) should be read as an inclusive phrase that modifies the term "public utility."  In support of this argument, Evercom relies on the definition of "public utility" in section 3.002(9) of PURA 1995, as amended by House Bill 2128.  *See* note 2, *supra*.  Evercom contends that the first sentence of section 3.002(9) defines "public utility" or "utility" to include only "dominant carriers," and therefore, since Evercom is a non-dominant carrier, it cannot be a "public utility" or "utility" within the meaning of the statute.  We disagree.

Evercom's argument considers only the first sentence of section 3.002(9) and fails to consider the sentence in context.  Read in its entirety and in context with the rest of PURA 1995, as amended by House Bill 2128, section 3.002(9) defines "public utility" or "utility" to include the

---

[3] This reference in section 1.351(c) to "interexchange telecommunications carriers who do not provide local exchange telephone service" further confirms the legislature's intent that non-dominant interexchange telecommunications carriers like Evercom are subject to the GRA.  Section 3.002(2) of PURA 1995, as amended by House Bill 2128, generally defines "dominant carriers" as certificated local exchange carriers with sufficient market power to control the prices of telephone service.  House Bill 2128, sec. 3.002(2), 1995 Tex. Gen. Laws 2017, 2019.  Section 3.002(2)(C) also states that "[t]he term [dominant carrier] does not include an interexchange carrier that is not a certificated local exchange company, with respect to interexchange services."  *Id.* sec. 3.002(2)(C), 1995 Tex. Gen. Laws 2017, 2019.  Thus, by definition, "interexchange telecommunications carriers who do not provide local exchange telephone service" are not "dominant carriers."  Moreover, nothing prevents "interexchange telecommunications carriers who do not provide local exchange telephone service"—*i.e.*, non-dominant carriers, like Evercom—from collecting the GRA as a separate line item on the customer's bill as allowed under section 1.351(c).

8

universe of "telecommunications utilities" regulated by the commission. The first sentence references the term "dominant carriers," which is specifically defined in section 3.002(2), and equates "dominant carriers" with "telecommunications utilities." The remainder of section 3.002(9) identifies those telecommunications utilities who are excluded from the commission's jurisdiction and expressly states that "[i]nterexchange telecommunications carriers . . . are also telecommunications utilities." *See* note 2, *supra*. Although section 3.002(9) notes that the commission's jurisdiction over interexchange telecommunications carriers is limited, it does not exclude interexchange telecommunications carriers from the commission's jurisdiction.

Because Evercom reads the first sentence of section 3.002(9) in isolation and fails to consider the structure of PURA 1995 as a whole, we reject Evercom's overly narrow construction of these provisions, *see Helena Chem. Co.*, 47 S.W.3d at 493, and we conclude that section 3.002(9) does not preclude the assessment of the GRA against non-dominant interexchange telecommunications carriers like Evercom. Our conclusion is consistent with the overall structure of PURA 1995, as amended by House Bill 2128. As stated in section 1.004 of House Bill 2128, the terms "public utility" or "utility" have the meaning assigned in section 2.001 or 3.002. House Bill 2128, § 3, sec. 1.004, 1995 Tex. Gen. Laws 2017, 2017. Section 2.001 defined those electric utilities regulated by the commission, and section 3.002 defined those telecommunications utilities regulated by the commission. PURA 1995, sec. 2.001, 1995 Tex. Gen. Laws 31, 46; House Bill 2128, § 7, sec. 3.002(9), 1995 Tex. Gen. Laws 2017, 2020. Were we to accept Evercom's statutory construction argument, we would render the phrase "including interexchange telecommunications carriers" in section 1.351(a) of PURA 1995 meaningless. *See Shumake*, 199 S.W.3d at 287

(courts should avoid rendering statutory language mere surplusage). Because there is no dispute that Evercom is an interexchange telecommunications carrier, the plain language of section 1.351 and the structure of PURA 1995, as amended by House Bill 2128, as a whole make clear that Evercom is subject to the GRA. These provisions were in effect from September 1, 1995, through August 31, 1997. Accordingly, we overrule Evercom's issue on cross-appeal and affirm the district court's judgment that Evercom was subject to the GRA from April 1, 1997, to August 31, 1997.

### 2.   The 1997 codification of PURA

In 1997, the legislature codified PURA as part of the Texas Utilities Code. Act of May 8, 1997, 75th Leg., R.S., ch. 166, §§ 1-8, 1997 Tex. Gen. Laws 713, 713-1018. The 1997 codification became effective on September 1, 1997. *Id.* § 11, 1995 Tex. Gen. Laws 713, 1018. There is no dispute that the 1997 codification did not substantively change the law as it existed prior to September 1, 1997. Thus, the Comptroller and Evercom agree there is no basis for the district court's judgment finding that Evercom was subject to the GRA from April 1, 1997, to August 31, 1997, but not subject to the GRA from September 1, 1997, to December 31, 1998.

The 1997 codification retains the legislature's imposition of the GRA in section 16.001. *See* Tex. Util. Code Ann. § 16.001. Like its predecessor—section 1.351 of PURA 1995—section 16.001 imposes the GRA against "each public utility within the jurisdiction of the commission that serves the ultimate consumer, *including each interexchange telecommunications carrier*." *Id.* (emphasis added). Section 16.001 also continues to allow interexchange telecommunications carriers who do not provide local exchange telephone service—*i.e.*, non-dominant interexchange telecommunications carriers like Evercom—to collect the GRA as a

10

separate line item on the customer's bill. *Id.* § 16.001(c). Thus, we conclude that the plain language of section 16.001 subjects Evercom to the GRA.

To the extent Evercom argues the definitions in section 51.002 demonstrate that Evercom is not subject to the GRA, we reject that argument. Evercom contends that the third revisor's note to section 51.002 establishes that the term "public utility" or "utility" does not include non-dominant interexchange telecommunications carriers like Evercom. *See id.* § 51.002 revisor's note (3) (West 1998). Evercom's argument ignores the plain language of section 16.001(a), which imposes the GRA not only against "each public utility within the jurisdiction of the commission," but also against "each interexchange telecommunications carrier." Because the plain language of section 16.001 became effective on September 1, 1997, and continues in effect today,[4] we agree with the Comptroller that Evercom was also subject to the GRA for the period of September 1, 1997, through December 31, 1998. Therefore, we sustain the Comptroller's issue on appeal and reverse the district court's judgment to the extent it found Evercom was not subject to the GRA from September 1, 1997, to December 31, 1998.

## CONCLUSION

We conclude that the plain language of the relevant statutes subjects Evercom to liability for the GRA during the entire audit period from April 1, 1997, to December 31, 1998. Accordingly, we affirm that portion of the district court's judgment finding Evercom was subject to

---

[4] Although the legislature amended section 16.001 in 1999 to require retail electric providers and electric cooperatives to pay the GRA, the 1999 amendment does not affect the outcome here. *See* Act of May 21, 1999, 76th Leg., R.S., ch. 405, § 10, 1999 Tex. Gen. Laws 2543, 2547 (codified at Tex. Util. Code Ann. § 16.001 (West Supp. 2006)).

11

the GRA from April 1, 1997, to August 31, 1997; we reverse that portion of the district court's judgment finding Evercom was not subject to the GRA from September 1, 1997, to December 31, 1998; and we render judgment that Evercom was subject to the GRA for the remaining audit period from September 1, 1997, to December 31, 1998.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed:   May 1, 2007