TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00005-CV






Entergy Texas, Inc., Appellant


v.


Public Utility Commission of Texas; Cities of Beaumont, Bridge City, Conroe, Groves,
Huntsville, Montgomery, Navasota, Nederland, Orange, Pinehurst, Port Neches,
Shenandoah, Silsbee, and Willis; and Texas Industrial Energy Consumers, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GN-10-000645, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 

 Entergy Texas, Inc. appeals from the district court's judgment affirming a final order
of appellee Public Utility Commission of Texas. In the order, the Commission set Entergy's
2010 energy efficiency cost recovery factor (EECRF). See Tex. Util. Code Ann. § 39.905 (West
Supp. 2010); 16 Tex. Admin. Code § 25.181 (2008) (Public Util. Comm'n of Tex., Energy
Efficiency Goal). (1) On appeal, Entergy contends that the Commission misconstrued section 39.905
of the utilities code and misapplied the rule against retroactive ratemaking. Because we conclude
that the Commission's construction comports with the plain language of the statute, we affirm the
district court's judgment affirming the Commission's final order.

BACKGROUND


Statutory Framework

 In 1999, as part of the restructuring of the electric utility industry, the legislature
enacted section 39.905 of the utilities code, a part of the Public Utility Regulatory Act (PURA). See
Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 39, 1999 Tex. Gen. Laws 2543, 2600 (amended
2005) (current version at Tex. Util. Code. Ann. § 39.905). At that time, section 39.905, titled "Goal
For Energy Efficiency," provided that "electric utilities will administer energy savings incentive
programs" and that a goal for the programs was "to acquire additional cost-effective energy
efficiency equivalent to at least 10 percent of the electric utility's annual growth in demand." Id. 
The legislature directed the Commission that it "shall provide oversight and adopt rules and
procedures, as necessary, to ensure that the goal of this section is achieved by January 1, 2004." Id.

 Electric utilities recovered the costs of these programs through their base rates as
operating expenses. See Tex. Util. Code Ann. § 36.051 (West 2007). (2) Once base rates are set,
utilities' revenues from their rates are not reconciled with actual costs; the base rates are only
changed prospectively in rate proceedings. Id. §§ 36.101-.156 (West 2007); Public Util. Comm'n
v. GTE-Southwest, Inc., 901 S.W.2d 401, 406 (Tex. 1995) ("[U]tility rates, like any other legislation,
generally can have only prospective application and cannot be used to recoup losses or gains incurred
under prior legal rates.").

 In 2007, the legislature amended section 39.905, increasing its benchmark goals
applicable to residential and commercial customers. See id. § 39.905(a)(3). (3) As part of the
amendment, the legislature created a new type of rate schedule separate from base rates for utilities
to recover their energy efficiency expenditures. The legislature directed the Commission to establish
an "energy efficiency cost recovery factor" (EECRF). See id. § 39.905(b)(1). The legislature did
not expressly define EECRF, but stated that "[t]he commission shall provide oversight and adopt
rules and procedures to ensure that the utilities can achieve the goal of this section, including . . .
establishing an energy efficiency cost recovery factor for ensuring timely and reasonable cost
recovery for utility expenditures made to satisfy the goal of this section." Id. In contrast with the
procedure for recovering operating expenses in base rates, the legislature authorized EECRFs to be
adjusted to "match revenues against energy efficiency costs." Id. § 39.905(b-1).

 In accordance with the legislature's directive, the Commission adopted a new rule
25.181 in 2008. See 16 Tex. Admin. Code § 25.181 (4); see also Tex. Util. Code Ann. § 39.001 (West
2007). Subsection (f) of the new rule 25.181 addressed cost recovery and provided the procedures
for electric utilities to establish EECRFs. With this context, we turn to the parties' dispute.


The Parties' Dispute


 In May 2009, Entergy applied to set its 2010 EECRF rate schedule. In that
proceeding, Entergy sought to revise its EECRF to allow for the recovery of energy efficiency costs
that it alleged that it incurred but did not recover from 2005 to 2008. Entergy did not seek to recover
those costs in its initial proceeding to establish an EECRF. Entergy applied for its first EECRF in
May 2008, which was approved effective January 1, 2009.

 Appellees the Cities of Beaumont, Bridge City, Conroe, Groves, Huntsville,
Montgomery, Navasota, Nederland, Orange, Pinehurst, Port Neches, Shenandoah, Silsbee, and Willis
intervened in the proceeding to set Entergy's 2010 EECRF rate schedule, contesting Entergy's right
to recover its alleged energy efficiency costs incurred but unrecovered from 2005 to 2008. The
parties ultimately reached a stipulation that included the recovery of approximately $2.7 million
through Entergy's 2010 EECRF for energy efficiency costs that Entergy contended that it incurred
prior to 2009.

 The Commission, however, did not allow Entergy to include an adjustment in its
2010 EECRF for under-recovered energy efficiency costs prior to January 1, 2009. In its order, the
Commission's conclusions of law included that it could not adopt a stipulation that did not comport
with PURA and Commission rules and that, "[u]nder PURA, a utility may not adjust its EECRF for
over- or under-collected energy-efficiency costs recovered through base rates rather than through an
EECRF." The Commission explained:

 

 The Commission has previously concluded that adjustments to an EECRF under
PURA § 39.905(b-1) and P.U.C. Subst. R. 25.181(f) are allowed only for those
periods when an EECRF was in place. The adjustments are limited to those energy-efficiency costs for which the EECRF was set to recover. Energy-efficiency costs
that were previously included in and collected through base rates--prior to the
establishment of an EECRF--are not properly included in such an adjustment. 
[Entergy]'s first EECRF was approved in August 2008 to recover energy-efficiency
cost incurred in 2009. Thus, the energy-efficiency costs incurred prior to 2009 were
properly recovered through base rates, and are not recoverable under [Entergy]'s
EECRF. The Commission affirms its previous conclusion that under PURA
§ 39.905(b-1) and P.U.C. Subst. R. 25.181(f), a utility may seek adjustment of its
EECRF to reflect any over- or under-collection of energy-efficiency-costs-recovery
factor revenues from previous years in which the utility has an EECRF in place, but
not from pre-EECRF years. (Footnotes omitted.)



Among its authority for denying Entergy's request, the Commission cited State v. Public Utility
Commission, 883 S.W.2d 190, 199 (Tex. 1994), to support its conclusion that an adjustment for pre-2009 costs would violate the prohibition against retroactive ratemaking. The Commission also cited
a prior order concerning a different utility in which it had reached the same conclusion. Tex. Pub.
Util Comm'n, Application of Oncor Elec. Co. for 2010 Energy Efficiency Cost Recovery Factor,
Docket No. 36958, Order, at 1-2 (Nov. 23, 2009).

 Entergy filed a motion for rehearing and then sought judicial review of the
Commission's order. See Tex. Util. Code Ann. § 15.001 (West 2007). The district court affirmed
the Commission's final order. This appeal followed.


ANALYSIS


 In three issues, Entergy challenges the Commission's denial of Entergy's request to
adjust its 2010 EECRF rate schedule to recover energy efficiency costs incurred prior to Entergy's
establishment of an EECRF. Entergy contends that the district court's judgment should be reversed
because the Commission's decision to deny its request for energy efficiency costs incurred but
unrecovered from 2005 to 2008 violates sections 39.905(b-1) and (b)(3) of the utilities code, the
Commission's decision conflicts with its statutory obligation to adopt rules and procedures for
establishing an EECRF that ensures the timely recovery of reasonable costs expended on energy
efficiency programs, and the Commission's decision misapplies the rule against retroactive
ratemaking.


Scope and Standard of Review


 The Commission is "a creature of the legislature and has no inherent authority." 
GTE-Southwest, Inc., 901 S.W.2d at 406. As an administrative agency, the Commission "may
exercise only those specific powers that the law confers upon it in clear and express language." Id.
at 407. The Commission may not "contravene specific statutory language, . . . or impose additional
burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory
provisions." Cities of Corpus Christi v. Public Util. Comm'n, 188 S.W.3d 681, 690 (Tex.
App.--Austin 2005, pet. denied) (citation omitted). 

 The parties' dispute concerns statutory construction. (5) We review matters of statutory
construction de novo. See Texas Mun. Power Agency v. Public Util. Comm'n, 253 S.W.3d 184, 192
(Tex. 2007). Of primary concern in construing a statute is the express statutory language. 
See Galbraith Eng'g Consultants, Inc. v. Pochucha, 290 S.W.3d 863, 867 (Tex. 2009). We
apply the plain meaning of the text unless a different meaning is supplied by legislative
definition or is apparent from the context or the plain meaning leads to absurd results. Marks
v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 663 (Tex. 2010) (citing City of Rockwall v. Hughes,
246 S.W.3d 621, 625-26 (Tex. 2008)). We consider the entire act, not isolated portions. 20801, Inc.
v. Parker, 249 S.W.3d 392, 396 (Tex. 2008).


Section 39.905


 In its first issue, Entergy challenges the Commission's construction of section
39.905(b-1), contending that the Commission's construction conflicts with the plain language of the
statute. See Tex. Util. Code Ann. § 39.905(b-1). Subsection (b-1) states:


 The energy efficiency cost recovery factor under Subsection (b)(1) may not result in
an over-recovery of costs but may be adjusted each year to change rates to enable
utilities to match revenues against energy efficiency costs and any incentives to
which they are granted. The factor shall be adjusted to reflect any over-collection or
under-collection of energy efficiency cost recovery revenues in previous years.



Id. § 39.905(b-1). The Commission interprets this subsection to authorize adjustments for energy
efficiency costs expended in EECRF years, but not in years prior to the establishment of an EECRF. 
Entergy counters that the second sentence in this subsection "expressly permits utilities to adjust
their EECRFs to account for the over- or under-collection of energy efficiency costs in 'previous
years' - whether such costs were then recovered through base rates or through an EECRF." Entergy
focuses on the words "previous years," urging that those words are not ambiguous and expressly
include pre-EECRF years. Entergy also argues that the Commission's construction renders
"previous years" meaningless in the first year of EECRF rate schedules and that the legislature easily
could have drafted the section to include the limitation that the Commission has imposed.

 We begin with the statute's plain language. Reading the words "previous years" in
context, they follow the preposition "in" after the words "energy efficiency cost recovery revenues." 
The plain meaning of the prepositional phrase "in previous years" then is to qualify or limit "energy
efficiency cost recovery revenues." Had the legislature intended a broader category of revenues,
such as from base rates, or "costs" expended prior to the establishment of an EECRF, it could have
easily said so. See Hughes, 246 S.W.3d at 628-29 (declining to read additional words into statute
in construing statute). We also find the subject and verb of the sentence--"factor [EECRF] shall be
adjusted"--significant. See City of Marshall v. City of Uncertain, 206 S.W.3d 97, 105 (Tex. 2009)
(courts "'presume that every word of a statute has been included or excluded for a reason'") (citation
omitted). Before the collection of revenues from an EECRF may be "adjusted," an EECRF
necessarily had to be in existence.

 To support its argument that the legislature did not intend to limit "previous years"
to years in which an EECRF was in place, Entergy separates the first sentence from the second
sentence in subsection (b-1), arguing that the first sentence addresses the future and the second
sentence the past. The Commission's construction, however, harmonizes the first and second
sentences and gives meaning to each word and clause. See City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003) (effect must be given to each word and clause). The first sentence
references the "energy efficiency cost recovery factor [EECRF] under subsection (b)(1)," and
subsection (b)(1) states the legislature's directive to the Commission to "[establish] an energy
efficiency cost recovery factor [EECRF] for ensuring timely and reasonable cost recovery for utility
expenditures made to satisfy the goal of this section." Tex. Util. Code Ann. § 39.905(b)(1). At the
same time that it authorized the Commission to establish EECRFs, the legislature amended the
benchmark goals for 2007, 2008, and 2009. Id. § 39.905(a)(3).

 Consistent with its directive to the Commission "for ensuring timely and reasonable
cost recovery" to satisfy the legislature's goals, the legislature in the first sentence of subsection (b-1)
authorized EECRFs to be adjusted each year so that prospective revenues could reasonably
approximate the projected costs as well as any incentives. The second sentence also addresses the
new EECRF rate structure, but it addresses a further adjustment that does not have to be made on
an annual basis. The second sentence requires a reconciliation adjustment but it provides utilities
with the option of not seeking this additional adjustment every year. In this context, the plain
language of "previous years" has meaning in that it recognizes that this adjustment may be made for
more than one year at a time to reconcile actual revenues with energy efficiency costs. See Tex. 

Gov't Code Ann. § 311.012(b) (West 2005) ("The singular includes the plural and the plural includes
the singular."); City of San Antonio, 111 S.W.3d at 29.

 Entergy argues that the Commission's construction contravenes section 39.905(b)(3). 
See Tex. Util. Code Ann. § 39.905(b)(3). Subsection (b)(3) allows utilities to defer costs of
complying with section 39.905 when they are unable to establish an EECRF due to a rate freeze. Id. (6) 
Entergy argues that, if the Commission's construction of subsection (b-1) is correct, it is impossible
for a utility to recover deferred costs under subsection (b)(3) through an EECRF because the utility
would not have had an EECRF in place when it incurred the deferred costs. Under the plain
language of section (b)(3), however, the subsection is an exception to the general rule when a utility
is not able to implement an EECRF to allow the utility to defer its energy efficiency costs and to
adjust its first EECRF to recover the energy efficiency cost recovery revenues that should have been
collected while the utility was in a base rate freeze. The Commission's construction of subsection
(b-1) then does not conflict with subsection (b)(3).

 The Commission's construction also is consistent with the statutory scheme as a
whole. See Parker, 249 S.W.3d at 396 (in construing statutes, courts consider entire act, not isolated
portions). In enacting a new rate schedule and authorizing a reconciliation under the new rate
schedule between revenues and costs, we presume that the legislature acted with reference to the
established base rate scheme. See Tex. Util. Code Ann. § 36.051; Acker v. Texas Water Comm'n,
790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature
with complete knowledge of the existing law and with reference to it."). The legislature then was
aware that, prior to the establishment of an EECRF, a utility's energy efficiency costs would
continue to be accounted for in its base rates and that there would be no reconciliation between
actual revenues and costs. See Tex. Util. Code Ann. § 36.051; GTE-Southwest, Inc., 901 S.W.2d
at 407; Public Utility Comm'n, 883 S.W.2d at 199 ("Fundamental in the utility ratemaking process
is the principle that utility rates are set for the future, and not the past."). Allowing the recovery of
costs expended for years in which a utility was recovering costs under a base rate would be
inconsistent with this statutory scheme. Further, under Entergy's proposed construction, a utility
would be authorized on an open-ended basis to adjust its EECRFs to recover "costs" that were
accounted for in a utility's prior base rates, a significant departure from the statutory scheme. See
Presidio Ind. Sch. Dist. v. Scott, 309 S.W.3d 927, 931 (Tex. 2010) (citation omitted) ("Courts must
not give the words used by the Legislature an 'exaggerated, forced, or constrained meaning.'").

 As part of its first issue and in its second issue, Entergy argues that the Commission's
construction is unreasonable and not entitled to deference because it defeats one of the stated
purposes of the statute by denying Entergy the right to recover costs incurred to administer
statutorily-mandated energy efficiency programs. See Railroad Comm'n v. Texas Citizens for a Safe
Future & Clean Water, 336 S.W.3d 619, 624 (Tex. 2011) (citations omitted) (administrative
agency's "interpretation of statute it is charged with enforcing is entitled to 'serious consideration,'
so long as the construction is reasonable and does not conflict with the statute's language"). The
legislature directed the Commission in section 39.905(b)(1) to establish an EECRF "for ensuring
timely and reasonable cost recovery for utility expenditures made to satisfy the goal of this section." 
Tex. Util. Code Ann. § 39.905(b)(1). Although the 2007 amendments became effective September
1, 2007, the Commission did not adopt its new rule 25.181 until 2008, and the first EECRFs were
not implemented until January 1, 2009. Entergy argues that, under the Commission's construction,
utilities cannot recover their 2008 expenditures because of the Commission's inaction and that the
legislature could not have intended for utilities to be unable to recover their 2008 costs incurred to
satisfy the legislature's goals for that year simply because the Commission was unable to amend its
rules prior to May 2008.

 That utilities were unable to obtain an EECRF before January 1, 2009, however, is
not dispositive. We presume that the legislature was aware of the time that it would take for the
Commission to adopt rules for EECRFs and of the "regulatory lag" in setting rates. See Public Util.
Comm'n, 883 S.W.2d at 193 n.3, 199 (discussing "regulatory lag" in resetting rates "due to the
inherent inability in the regulatory process to allow for immediate rate decreases or increases" and
"recogniz[ing] that regulatory lag is ordinarily an element of the risk associated with investment in
a utility"); Acker, 790 S.W.2d at 301 (presume legislature aware of law and acting with reference to
it). Further, prior to its establishment of an EECRF, a utility could have sought to change its base
rates if they were not sufficient because of increased energy efficiency goals. See Tex. Util. Code
Ann. §§ 36.101-.111.

 Entergy also argues that the Commission's construction of section 39.905(b-1) is not
entitled to deference because it is directly contrary to its contemporaneous construction of the statute. 
In its order, however, the Commission cited a separate order concerning a different utility in which
it had reached the same conclusion. See Tex. Pub. Util. Comm'n, Application of Oncor Elec. Co.
for 2010 Energy Efficiency Cost Recovery Factor, Docket No. 36958, Order, at 1-2. Further, the
plain language of the Commission's rule adopting the procedures for establishing an EECRF is
consistent with its construction of the statute. See 16 Tex. Admin. Code § 25.181; Rodriguez
v. Service Lloyds Ins. Co., 997 S.W.2d 248, 254 (Tex. 1999) (courts review administrative rules in
the same manner as statutes).

 Rule 25.181 states that a utility may recover its energy efficiency program costs
through an EECRF, base rates, or deferred until the costs may be included in an EECRF. 
16 Tex. Admin. Code § 25.181(f)(1), (2), & (7). The rule also states: "Each year, a utility with an
EECRF shall apply to adjust the EECRF in order to . . . minimize any over- or under-collection of
energy efficiency costs resulting from the use of the EECRF." Id. § 25.181(f)(4) (emphasis added). 
The rule further requires that a utility's application to establish or change an EECRF to "contain the
actual revenues attributable to the EECRF for any period for which the utility seeks to adjust the
EECRF for an under- or over-recovery of EECRF revenues," see id. § 25.181(f)(9)(C) (emphases
added), and places the burden on the utility to prove that the "calculations of any under- or
over-recovery of EECRF revenues is consistent with this section." Id. § 25.181(f)(11)(B) (emphasis
added). Consistent with the Commission's construction of section 39.905(b-1), the plain language
of rule 25.181 makes clear that the reconciliation adjustment is between revenues and costs incurred
under an EECRF.

 We conclude that the Commission's construction of section 39.905(b-1) comports
with the plain language of the statute. We overrule Entergy's first and second issue.


Retroactive Ratemaking


 In its third issue, Entergy urges that its interpretation of section 39.905 that would
allow Entergy to adjust its EECRF to reflect under-recoveries of its energy efficiency program costs
from pre-EECRF years would not constitute retroactive ratemaking or violate the constitutional
prohibition on retroactive laws. See Tex. Const. art. I, § 16; Public Util. Comm'n, 883 S.W.2d
at 199. Because we have concluded that the Commission's construction of section 39.905(b-1)
comports with the plain language of the statute, we need not address this issue. See Tex. R. App.
P. 47.1.


CONCLUSION


 For these reasons, we affirm the district court's judgment affirming the final order
of the Commission.

 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 8, 2012
1. Section 39.905 of the utilities code was amended in 2011, see Act of May 17, 2011,
82d Leg., R.S., ch. 1346, § 1, 2011 Tex. Gen. Laws 180 (effective Sept. 1, 2011), and Commission
rule 25.181 was amended in 2010. See 35 Tex. Reg. 7747 (2010). We refer to section 39.905 and
rule 25.181 as they existed prior to the 2010 and 2011 amendments.
2. Section 36.051 of the utilities code provides the parameters for setting base rates:


 In establishing an electric utility's rates, the regulatory authority shall establish the
utility's overall revenues at an amount that will permit the utility a reasonable
opportunity to earn a reasonable return on the utility's invested capital used and
useful in providing service to the public in excess of the utility's reasonable and
necessary operating expenses.



Tex. Util. Code Ann. § 36.051 (West 2007).
3. Subsection (a)(3) of section 39.905, as amended in 2007, stated:


 [E]ach electric utility will provide, through market-based standard offer programs or
limited, targeted, market-transformation programs, incentives sufficient for retail
electric providers and competitive energy service providers to acquire additional
cost-effective energy efficiency for residential and commercial customers equivalent
to at least:


 (A) 10 percent of the electric utility's annual growth in demand of residential and
commercial customers by December 31, 2007;


 (B) 15 percent of the electric utility's annual growth in demand of residential and
commercial customers by December 31, 2008, provided that the electric
utility's program expenditures for 2008 funding may not be greater than 75
percent above the utility's program budget for 2007 for residential and
commercial customers, as included in the April 1, 2006, filing; and


 (C) 20 percent of the electric utility's annual growth in demand of residential and
commercial customers by December 31, 2009, provided that the electric
utility's program expenditures for 2009 funding may not be greater than 150
percent above the utility's program budget for 2007 for residential and
commercial customers, as included in the April 1, 2006, filing; . . . .



Id. § 39.905(a)(3)). Subsection (a)(3) was further amended in 2011, but the 2011 amendment is not
applicable here. See Act of May 17, 2011, 82d Leg., R.S., ch. 1346, § 1, 2011 Tex. Gen. Laws 180
(effective Sept. 1, 2011).
4. Rule 25.181 was further amended effective December 1, 2010, but the amendment is not
applicable here. See 35 Tex. Reg. 7747 (2010). As stated previously, references to rule 25.181 are
to the rule as it existed prior to the 2010 amendment. See 33 Tex. Reg. 3585 (2008).
5. The utilities code generally requires a court to review the Commission's decisions under
the substantial evidence rule. See Tex. Util. Code. Ann. § 15.001 (West 2007); Tex. Gov't Code
Ann. § 2001.174(2) (West 2008). The substantial evidence rule requires a court to reverse or remand
a case to the administrative agency for further proceedings "if substantial rights of the appellant have
been prejudiced because the administrative findings, inferences, conclusions, or decisions" are,
among other grounds, "not reasonably supported by substantial evidence," or are "arbitrary or
capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." 
Tex. Gov't Code Ann. § 2001.174(2)(E), (F).
6. Section 39.905(b)(3) states:

 

 (b) The commission shall provide oversight and adopt rules and procedures to
ensure that the utilities can achieve the goal of this section, including:


 (3) providing a utility that is unable to establish an energy efficiency cost
recovery factor in a timely manner due to a rate freeze with a
mechanism to enable the utility to:


 (A) defer the costs of complying with this section; and


 (B) recover the deferred costs through an energy efficiency cost
recovery factor on the expiration of the rate freeze period;
. . . .


Tex. Util. Code Ann. § 39.905(b)(3).