**CITY OF SAN ANTONIO, Petitioner,**

v.

**CITY OF BOERNE, Respondent.**

No. 01–1054.

Supreme Court of Texas.

Argued Sept. 18, 2002.

Delivered June 26, 2003.

Rehearing Denied Aug. 21, 2003.

Harvey L. Hardy, Law Office of Harvey Hardy, Donald S. Bayne, San Antonio City Attorney's Office, San Antonio, for Petitioner.

Randall B. Richards, Law Offices of Randall B. Richard, Boerne, for Respondent.

Justice JEFFERSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice O'NEILL, Justice SCHNEIDER, and Justice WAINWRIGHT joined.

In this municipal annexation dispute, we consider whether a county commissioners court may petition a city to include portions of its county's roads within that city's extraterritorial jurisdiction (i) pursuant to the Legislature's grant of "general control over all roads," *see* TEX. LOC. GOV'T CODE § 81.028(5),[1] or (ii) as agent of the State of Texas, *see id.* § 42.022(b). Because we hold that the Legislature has neither expressly nor impliedly conferred such power upon a commissioners court under either section 81.028(5) or 42.022(b), we reverse the court of appeals' judgment and remand the case to the district court for further proceedings consistent with this opinion.

## I

### BACKGROUND

■ The City of San Antonio and the City of Boerne stipulated to the relevant facts. On November 5, 1987, San Antonio's City Council passed an ordinance (the "San Antonio Ordinance") annexing certain property located in San Antonio's extraterritorial jurisdiction.[2] On the December 31,

1987 effective date of this annexation, San Antonio's extraterritorial jurisdiction expanded to include property that was previously unincorporated by any city. *See id.* § 42.022(a).

After San Antonio passed its annexation ordinance, but before it became effective, a number of property owners in Kendall and Comal Counties petitioned Boerne to include their property within Boerne's extraterritorial jurisdiction. *See id.* § 42.022(b) ("The extraterritorial jurisdiction of a municipality may expand beyond the distance limitations imposed by Section 42.021 to include an area contiguous to the otherwise existing extraterritorial jurisdiction of the municipality if the owners of the area request the expansion."). However, the property of those petitioning owners was too dispersed to satisfy section 42.022(b)'s contiguity requirement. To overcome that obstacle, Boerne—which had agreed to coordinate the annexation process—accepted petitions from Kendall and Comal County commissioners courts to include various sections of their counties' roads within Boerne's extraterritorial jurisdiction. Boerne then passed a number of ordinances (the "Boerne Ordinances") extending its extraterritorial jurisdiction accordingly.

Boerne concedes that, without including county roads, much of the area is insufficiently contiguous to satisfy section 42.022(b).[3] By including these county roads, however, Boerne believes it properly acquired jurisdiction over an area that,

---

1. Subsequent to this litigation, the Legislature recodified section 81.028 in the Transportation Code. *See* TEX. TRANSP. CODE ch. 251. Because there is no substantive change in the statute, we refer to section 81.028—the statute in effect at the time the parties' dispute arose.

2. Extraterritorial jurisdiction is an unincorporated land area that is contiguous to a municipality's corporate boundary. *See* discussion *infra* Part III.A.

3. Neither San Antonio nor Boerne contend that, even considering the disputed county roads, the area that Boerne seeks to annex is not "contiguous to the otherwise existing extraterritorial jurisdiction of the municipality." TEX. LOC. GOV'T CODE § 42.022(b).

absent the Boerne Ordinances, would be within the extraterritorial jurisdiction created by the San Antonio Ordinance. Thus, in contravention of Local Government Code section 42.022(c), San Antonio and Boerne effectively claimed authority over the same area. *See id.* § 42.022(c) ("The expansion of the extraterritorial jurisdiction of a municipality through annexation, request, or increase in the number of inhabitants may not include any area in the existing extraterritorial jurisdiction of another municipality.").

In 1998, Boerne sued San Antonio, seeking a declaratory judgment that the overlapping extraterritorial jurisdiction belonged to Boerne, not San Antonio. Boerne also sought a permanent injunction prohibiting San Antonio from asserting jurisdiction over the contested land area. Based on stipulated facts, the trial court ruled that the overlapping property was validly within Boerne's extraterritorial jurisdiction before the San Antonio Ordinance went into effect. The trial court's judgment also provided that as of December 28, 1987, the effective date of the Boerne Ordinances, Boerne had exclusive control over the overlapping extraterritorial jurisdiction. The judgment "permanently enjoined [San Antonio] from asserting any jurisdiction or authority, or attempting to enforce its ordinances, rules and/or regulations, over the area [ ] declared to be the exclusive extraterritorial jurisdiction of [Boerne]."

San Antonio appealed the trial court's judgment and argued, among other things, that the Kendall and Comal County commissioners courts lacked authority to petition Boerne to include segments of their counties' roads within Boerne's extraterritorial jurisdiction.[4] The court of appeals affirmed the trial court's judgment, holding that "county commissioners, as agents for the State, were empowered to petition for inclusion in the extraterritorial jurisdiction of Boerne." 61 S.W.3d 571, 579. In this Court, San Antonio challenges the commissioners courts' authority to petition a city to annex county roads pursuant to Local Government Code sections 81.028 and 42.022. We granted San Antonio's petition for review to resolve this issue. 45 Tex. Sup.Ct. J. 621 (May 11, 2002).

## II

### STANDARD OF REVIEW

We review matters of statutory construction *de novo*. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex.2000); *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex.1999). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *see also* TEX. GOV'T CODE § 312.005; *Am. Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex.2000). We look first to the "plain and common meaning of the statute's words." *Gonzalez*, 82 S.W.3d at 327. If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* We determine legislative intent from the entire act and not just its isolated portions. *Id.* (citing *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998)). Thus, we " 'read the statute as a whole and interpret it to give effect to every part.' " *Id.* (quoting *Jones*, 969 S.W.2d at 432).

---

4. San Antonio also challenged whether, after it passed its ordinance upon "first reading," Boerne could acquire jurisdiction over the same property. The court of appeals held that the first city to actually complete the annexation process acquired jurisdiction over the property. 61 S.W.3d 571, 576. Because San Antonio did not contest that holding here, we express no opinion on its merits.

With these principles in mind, we now turn to the parties' arguments.

## III

### DISCUSSION

San Antonio and Boerne agree that the issue here is whether a county commissioners court may, either pursuant to powers set forth in Local Government Code section 81.028 or as the State's agent under Local Government Code section 42.022(b), petition to include portions of county roads within a given municipality's extraterritorial jurisdiction. *See* TEX. LOC. GOV'T CODE §§ 42.022, 81.028. Boerne argues that the Legislature's reenactment of section 42.002—subsequent to section 81.028's enactment—establishes the Legislature's intent to give commissioners courts the authority to petition for annexation. San Antonio, on the other hand, contends that the statutes are unrelated and that our construction of one should not influence our construction of the other. Before analyzing these contentions, we briefly trace the historical background of extraterritorial jurisdiction and annexation in Texas and discuss the source of and limitations on a commissioners court's power.

### A

### Extraterritorial Jurisdiction

Extraterritorial jurisdiction refers to "the unincorporated area that is contiguous to the corporate boundaries of the municipality" and is located within a specified distance of those boundaries, depending upon the number of inhabitants within the municipality. *Id.* § 42.021. The purpose of extraterritorial jurisdiction is "to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities." *Id.* § 42.001.

Generally, a municipality's extraterritorial jurisdiction may not expand beyond legislatively prescribed limits. *See id.* § 42.021. If the owners of a particular area request an expansion, however, "[t]he extraterritorial jurisdiction of a municipality may expand beyond the distance limitations imposed by Section 42.021 to include an area contiguous to the otherwise existing extraterritorial jurisdiction of the municipality." *Id.* § 42.022(b). Boerne argues that the commissioners courts' petitions bring this case within section 42.022's exception permitting expansion beyond the legislatively prescribed extraterritorial limits.

### B

### Municipal Annexation and the Home Rule Amendment

■ Before 1912, the Legislature created virtually all cities and municipal corporations. *See* TEX. CONST. art. XI, § 5 interp. commentary; *see also* Robert R. Ashcroft & Barbara Kyle Balfour, *Home Rule Cities and Municipal Annexation in Texas: Recent Trends and Future Prospects*, 15 ST. MARY'S L.J. 519, 520 (1984). At that time, Texas permitted annexation under only two circumstances: (i) pursuant to the general law, usually by majority vote of the annexed residents, or (ii) by special act of the Legislature granting or amending a specific city's charter. *See* TEX. CONST. art. XI, § 5 interp. commentary; Trueman O'Quinn, *Annexing New Territory: A Review of Texas Law and the Proposals for Legislative Control of Cities Extending Their Boundaries*, 39 TEX. L.REV. 172, 175 (1960). By adopting the Home Rule Amendment in 1912, Texas withdrew the Legislature's power to grant and change home rule city charters by special laws.[5] TEX. CONST. art. XI, § 5

---

**5.** Under the Home Rule Amendment, cities having more than five thousand inhabitants

interp. commentary (citing *State ex rel. Wayland v. Vincent*, 217 S.W. 402, 405 (Tex.Civ.App.-Amarillo 1919), *aff'd*, 235 S.W. 1084, 1088 (Tex.1921)).

With the Home Rule Amendment, home rule cities acquired the authority to annex property without the property owners' consent and without first establishing a need for the new area. Texas Legislative Council, *Municipal Annexation: A Report to the 57th Legislature* 4 (1960); O'Quinn, *supra*, at 172. The first municipality to begin annexation procedures on unclaimed territory obtained jurisdiction over that property. Texas Legislative Council, *supra*, at 5 (discussing first reading process); Ashcroft & Balfour, *supra*, at 523–24. This virtually unbridled annexation authority enabled cities to claim territory without incurring any obligation to provide new services or to formally annex the designated property. Texas Legislative Council, *supra*, at 38–40; Ashcroft & Balfour, *supra*, at 524. The result, as noted by one commentator, was that "cities were quick to engage in annexation wars and to stake [their] claim[s]." Ashcroft & Balfour, *supra*, at 524; *see also* Texas Legislative Council, *supra*, at 47 (discussing apparently "frivolous" and "spiteful" motivations for annexation); O'Quinn, *supra*, at 172 (stating that cities "turned annexation into a contest of communities").

## C

### The Municipal Annexation Act of 1963

 In 1963, reacting to these widespread annexation wars, the Legislature passed the Municipal Annexation Act.[6] TEX.REV.CIV. STAT. art. 970a, § 1 (1963). The Act was designed "to curb the virtually unlimited power of home rule municipalities to unilaterally annex territory." *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 663 n. 1 (Tex.1995); *Sitton v. City of Lindale*, 455 S.W.2d 939, 941 (Tex.1970). The Act's main provisions limited cities' annexation powers by: (i) requiring cities to complete the annexation process within ninety days; (ii) restricting the annexed territory's size and shape; and (iii) prohibiting cities from annexing property that was not within the confines of their extraterritorial jurisdiction. TEX. REV.CIV. STAT. art. 970a, § 7 (1963). These limitations frame our discussion of a commissioners court's authority.

## D

### Commissioners Courts' Authority

 A commissioners court's primary function is to administer its county's business affairs. *Avery v. Midland County*, 406 S.W.2d 422, 426 (Tex.1966), *vacated*

---

may adopt a home rule charter. *See* TEX. CONST. art. XI, § 5. "Adopted in 1912, the home rule amendment 'altered the longstanding practice of having special charters individually granted and amended by the legislature' for the State's larger cities." *Black v. City of Killeen*, 78 S.W.3d 686, 692 (Tex.App.-Austin 2002, pet. denied) (quoting 22 David B. Brooks, *Texas Practice: Municipal Law and Practice* § 1.17 (2d ed.1999)). The amendment effectively created home rule cities as "mini-legislatures." *Id.* Cities adopting a home rule charter have the full power of self government and look to the Legislature only for limitations on their power. *Id.* (citing *Dallas Merchant's & Concessionaire's Ass'n v.*

*City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993)). Nonetheless, the Legislature retained the authority to prescribe limitations on how cities exercised their annexation powers. *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948) ("The result [of the Home Rule Amendment] is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers.").

6. The Municipal Annexation Act is currently codified at chapters 42 and 43 of the Local Government Code.

*on other grounds,* 390 U.S. 474, 485–86, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). Though they are creatures of the Texas Constitution, counties and commissioners courts are subject to the Legislature's regulation. *Orndorff v. State ex rel. McGill,* 108 S.W.2d 206, 210 (Tex.Civ.App.-El Paso 1937, writ ref'd). The powers the Legislature confers on counties and commissioners courts are duties rather than privileges. *Id.* at 209. Thus, a commissioners court may exercise only those powers expressly given by either the Texas Constitution or the Legislature. *Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451, 453 (1948). When the Constitution or Legislature imposes an obligation on a commissioners court, that commissioners court also has the implied authority to exercise the power necessary to accomplish its assigned duty. *Anderson v. Wood,* 137 Tex. 201, 152 S.W.2d 1084, 1085 (1941).

Turning now to the parties' contentions, we must determine whether the Legislature, in giving commissioners courts general control over the roads, expressly or impliedly conferred the authority to petition a city to annex portions of county roads.

## IV

### ANALYSIS

Boerne contends that, in enacting section 81.028, the Legislature intended to give commissioners courts broad power over "all things involving, relating to or applicable to [public] roads." Specifically, Boerne asserts that the statute's "general control" language shows that the Legislature authorized a commissioners court to voluntarily petition a city to include a county road within its extraterritorial jurisdiction. Boerne further argues that, pursuant to Local Government Code section 42.022(b), a commissioners court can, as the State's agent, exercise the State's power as owner to petition for annexation. San Antonio contends that neither section 81.028 nor 42.022(b) empowers a commissioners court to petition a municipality to annex county roads. As to section 81.028, San Antonio argues· that the Legislature, in giving commissioners courts "general control" over the roads, intended only to exercise those powers required to serve the traveling public, such as regulating traffic and designing, constructing, repairing, and maintaining public roads. Moreover, San Antonio contends that, because the State does not own county roads, a commissioners court has no authority under section 42.022(b) to act as the State's agent in petitioning for annexation.[7]

### A

### General Control Over Roads

■ The Legislature gave commissioners courts general control over the roads in 1876. *See* Act approved July 22, 1876, 15th Leg., R.S., ch. 55, § 4, 1876 Gen. Laws, *reprinted in* 8 H.P.N. GAMMEL, LAWS OF TEXAS 1882–1897, 887–88 (1898). At the time the parties' dispute arose, the relevant provision specifying a commissioners court's power provided:

> Each commissioners court may: (1) establish public ferries whenever the pub-

---

**7.** As discussed more fully in section IV.B *infra,* the parties originally assumed that the State owned the county roads at issue and stipulated accordingly to proposed boundaries. Based on San Antonio's original construction of section 42.022(b), San Antonio argued that, although the State owned such roads, it did not specifically delegate its power to petition for annexation to commissioners courts; thus, absent this express delegation, a commissioners court could not exercise the State's authority as owner to petition for annexation. *See* discussion *supra* Part III.B.

lic interest may require; (2) lay out and establish, change, discontinue, close, abandon, or vacate public roads and highways; (3) build bridges and keep them in repair; (4) appoint road overseers and apportion hands; (5) exercise *general control* over all roads, highways, ferries, and bridges in the counties.... TEX. LOC. GOV'T CODE § 81.028 (emphasis added). Because the Legislature did not define "general control," we will use tools of statutory construction to determine its meaning. *Cf. Cail v. Serv. Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983) ("If the disputed statute is clear and unambiguous extrinsic aids and rules of statutory construction are inappropriate.") (citation omitted).

▮ A fundamental rule of statutory construction is to ascertain and give effect to the Legislature's intent. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979); *Imperial Irrigation Co. v. Jayne*, 104 Tex. 395, 138 S.W. 575, 581 (1911). When general words (like "general control") follow specific and particularized enumerations of powers (like "establish public ferries" and "lay out and establish ... public roads"), we treat the general words as limited and apply them only to the same kind or class of powers as those expressly mentioned. *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 272 (1944). We employ this rule to construe specific terms no more broadly than the Legislature intended. *See id.* Moreover, the meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute. *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978).

▮ Applying these canons of construction, we conclude that the Legislature's grant of general control over the roads does not include the power to petition a city to annex certain portions of a given county road. If, as Boerne contends, "general control" is read to include the power to petition for annexation, then there would have been no need for the Legislature to illustrate in subsections one through four the types of specific power a commissioners court may utilize pursuant to section 81.028. *See Spence v. Fenchler*, 107 Tex. 443, 180 S.W. 597, 601 (1915) ("It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous or inoperative."). Because a commissioners court's power is limited to that which is expressly delegated to it by the Texas Constitution or Legislature, or necessarily implied to perform its duties, we will not read the Legislature's grant of general control to be more expansive than the type of powers set forth in section 81.028. *State ex rel. City of Jasper v. Gulf States Utils. Co.*, 144 Tex. 184, 189 S.W.2d 693, 698 (1945) (limiting commissioners courts' powers to those expressly conferred or necessarily implied); *Mo.-Kan.-Tex. Ry. Co. of Tex. v. Thomason*, 280 S.W. 325, 327 (Tex.Civ.App.-Austin 1926, writ ref'd) ("It has long been the rule of the courts to construe [exceptions to general rules] strictly."). Section 81.028, when construed as a whole, "clearly contemplate[s] that the commissioners court of each county shall regard [public transportation] as a system, to be laid out, changed, repaired, improved, and maintained, as far as practical, as a whole to the best interest and welfare of all the people of the county." *Canales*, 214 S.W.2d at 454–55. Therefore, when we construe a commissioners court's express power under section 81.028, we focus on the statute's transportation and safety aspects. In so doing, we hold that the Legislature intended to limit a commissioners court's authority under section 81.028 to matters relating to public travel. *See* TEX. LOC. GOV'T CODE § 81.028.

A commissioners court's actions are thus sanctioned under section 81.028 only if related to its duty to protect the public's interest in transportation. *See Canales,* 214 S.W.2d at 456–57. Unless the power to petition for annexation is necessary for a commissioners court to carry out that function, we will not imply that it has such power. *See Gulf States Utils. Co.,* 189 S.W.2d at 698; *Terrell v. Sparks,* 104 Tex. 191, 135 S.W. 519, 521 (1911). Here, the power to petition for inclusion in a city's extraterritorial jurisdiction is neither expressly conferred nor necessarily implied to enable a commissioners court to perform its delegated duty to provide safe roads for public travel. Accordingly, we reject Boerne's broad construction of the phrase "general control," and hold that a county's commissioners court is without authority to petition for annexation of its county roads under section 81.028.

## B

### Commissioners Courts as Agents of the State

Although related to the parties' arguments about section 81.028, we analyze separately whether a county commissioners court, acting as the State's agent, can petition a municipality to annex portions of the county's roads. San Antonio and Boerne dispute whether the Legislature authorized commissioners courts to petition cities for annexation by enacting section 42.022, which provides:

> The extraterritorial jurisdiction of a municipality may expand beyond the distance limitations imposed by Section 42.021 to include an area contiguous to the otherwise existing extraterritorial jurisdiction of the municipality if the *owners* of the areas request the expansion.

TEX. LOC. GOV'T CODE § 42.022(b) (emphasis added). Boerne focuses on the statute's reference to "owners." It argues that "[t]he Legislature, acting for the State, has primary and plenary power to control and regulate public roads and streets and it may delegate such powers to the counties in this state." Boerne then reasons that, because the Legislature gave commissioners courts general control over all roads in section 81.028, a commissioners court may—with respect to public roads within its jurisdiction—discharge the "owner's" prerogative by petitioning for annexation.

San Antonio repeats its earlier contention, which we have sustained, that the counties' "general control" over roads is not sufficient to give them the power to petition for inclusion in a municipalities' extraterritorial jurisdiction. San Antonio's position regarding the State's "ownership" of county roads, however, has changed. In its initial briefing, San Antonio did not dispute that the State owned those roads, but argued that the counties were never granted specific authority to assert the State's ownership rights to petition for inclusion within a city's extraterritorial jurisdiction. Subsequently, at our request, the State filed an amicus brief in which it denied fee simple ownership of the roads.[8] San Antonio has now adopted the State's position and argues that, because the State is not fee simple owner of the roads in question, the commissioners courts cannot exercise the State's "ownership" right to petition for inclusion in Boerne's extraterritorial jurisdiction.

■ Boerne correctly asserts, however, that the record in this case does not reflect title to the roads, whether fee simple, easement or otherwise. We note that while the State is not precluded from own-

---

**8.** The State contends that "[t]he parties and the court of appeals' assumption that the State is the fee simple 'owner' of the strips of land occupied by the county roads is incorrect" and that "the State owns only easements for the roads at issue."

ing county roads in fee simple,[9] we have generally held that unless otherwise provided in the grant or conveyance, the owner of land abutting a street, alley, or public highway owns the fee to the center of the road, subject only to the easement in favor of the public to a right of passage.[10] From the record presented on appeal, we can neither determine who "owns" the county roads nor the nature of that ownership. But we need not ascertain the exact nature of the State's interest to determine whether a county is authorized to petition a municipality for annexation on the State's behalf. Nothing in section 42.022(b) clearly permits a commissioners court, purportedly acting on behalf of the State, to advance purely provincial concerns for a subset of the counties' landowners. Because a commissioners court has only those powers expressly conferred or those powers necessarily implied from other grants of power, we hold that a commissioners court is not entitled, as agent of the State, to petition a municipality for annexation. *See Canales,* 214 S.W.2d at 453.

Finally, we note that the parties' assumption regarding ownership may affect the result of this case on remand. As outlined above, at the time they stipulated to exhibits concerning extraterritorial boundaries, the parties were operating un-der what may have been an incorrect assumption regarding ownership of the roads at issue. For example, Boerne asserts that, if abutting property owners have fee simple title to the centerline of the road, Boerne's extraterritorial jurisdiction may be greater than its stipulations at trial. The merit of Boerne's argument should be addressed by the trial court in the first instance, and therefore we express no opinion on the subject. Accordingly, we remand the case to the trial court to determine San Antonio and Boerne's extraterritorial boundaries in light of our decision and to permit the parties to withdraw stipulated exhibits if warranted. TEX.R.APP. P. 60.2(d), 60.3; *Members Mut. Ins. Co. v. Tapp,* 469 S.W.2d 792, 793 (Tex.1971) (remanding in the interest of justice because party misunderstood the effect of a trial stipulation).

## V

### CONCLUSION

■ Commissioners courts have limited authority. They possess only those powers expressly conferred by the Texas Constitution and the Legislature, and those necessarily required to perform their delegated duties. By granting commissioners courts general control over the roads, the Legislature imposed on them a duty to make the roadways safe for public

---

9. *See* TEX. LOC. GOV'T CODE § 251.001(b) ("A municipality condemning land under this section may take a fee simple title to the property if the governing body expresses the intention to do so.").

10. *Angelo v. Biscamp,* 441 S.W.2d 524, 526 (Tex.1969) ("[A] deed to land abutting on a railroad right-of-way conveys title to the center of the right-of-way unless a contrary intention is expressed in the instrument."); *State v. Williams,* 161 Tex. 1, 335 S.W.2d 834, 836 (1960) ("When a conveyance is made of a piece of property abutting upon a public highway, it is natural to assume, in the absence of an express reservation to the contrary, that the grantor intended to convey the same with all of the beneficial rights enjoyed by him in its use."); *Humble Oil & Refining Co. v. Blankenburg,* 149 Tex. 498, 235 S.W.2d 891, 893 (1951) (dedication of plazas, parks, streets and alleys to the use and benefit of the public created an easement, not fee simple title); *Cox v. Campbell,* 135 Tex. 428, 143 S.W.2d 361, 362 (1940) ("The established doctrine of the common law is, that a conveyance of land bounded on a public highway, carries with it the fee to the centre of the road, as part and parcel of the grant. Such is the legal construction of the grant, unless the inference that it was so intended, is rebutted by the express terms of the grant.").

travel. Simultaneously, the Legislature limited their powers to those expressly given or necessary to fulfill their obligations to the traveling public. Petitioning a municipality to annex portions of county roads is unrelated to a commissioners court's specific duty to ensure safe travel. And, because neither the Texas Constitution nor the Legislature delegated any power the State may have to petition a city for annexation to commissioners courts, those courts cannot—on the State's behalf—petition a city to include county roads within that city's extraterritorial jurisdiction.

We reverse the court of appeals' judgment and remand the case to the district court for further proceedings consistent with this opinion.

Justice SMITH concurred in the judgment only.