ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 14, 2014

The Honorable Marco A. Montemayor
Webb County Attorney
1110 Washington Street, Suite 301
Laredo, Texas 78040

Opinion No.  GA-1076

Re: Constitutional questions related to funding of County Energy Transportation Reinvestment Zones (CETRZ)  (RQ-1187-GA)

Dear Mr. Montemayor:

On behalf of the Webb County Auditor, your office inquires about recently enacted Senate Bill 1747, relating to county energy transportation reinvestment zones,[1] and asks whether the tax increment funding mechanism may be subject to challenge under article VIII, section 1(a) of the Texas Constitution, which requires ad valorem taxation to be equal and uniform. Request Letter at 1; *Parker Cnty. v. Spindletop Oil & Gas Co.*, 628 S.W.2d 765, 767 (Tex. 1982).

Senate Bill 1747 adds section 222.1071 to the Transportation Code and authorizes the creation of a county energy transportation reinvestment zone ("CETRZ") to fund transportation improvements in areas affected by oil and gas exploration activities.[2] A county creates a CETRZ by designating an affected area, or zone, to promote one or more transportation infrastructure projects in the area. *See* TEX. TRANSP. CODE ANN. § 222.1071(b)(1) (West Supp. 2013). The order designating the zone must create a tax increment account and establish the ad valorem tax increment base year. *See id.* § 222.1071(f)(2)–(3); *see* Tex. Att'y Gen. Op. No. GA-0549 (2007) at 2–3 (explaining how tax base of total appraised property value in a zone is designated and that any increase in the tax revenue over taxes due on the base value—the tax increment—is captured and put into a separate fund). A county pays the tax increment, less specified amounts, into the tax increment account. *See* TEX. TRANSP. CODE ANN. § 222.1071(h) (West Supp. 2013). Tax increment funds may be used for infrastructure projects and to apply for grants from the state transportation infrastructure fund for zone infrastructure projects. *See id.* § 222.1071(i); *see also id.* §§ 256.101–.106 (providing for the Transportation Infrastructure Fund).

---

[1]*See* Letter from the office of Honorable Marco A. Montemayor, Webb Cnty. Att'y, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Feb. 18, 2014), http://www.texasattorneygeneral.gov/opin ("Request Letter").

[2]*See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1372, §§ 2, 7, 2013 Tex. Gen. Laws 3640, 3642–44, 3645 (providing that it prevails); *see also* Act of May 17, 2013, 83rd Leg., R.S., ch. 1134, § 1, 2013 Tex. Gen. Laws 2703–05.

Your several questions about section 222.1071 are intricate and include multiple aspects. *See* Request Letter at 1–2. Yet, the fundamental issue common to the questions is the potential impact of the constitutional "equal and uniform" limitation on the CETRZ tax increment funding mechanism. *See id.* Despite the differing emphases of the questions, the analysis under the equal and uniform provision is the same so we consider them together.

Tax increment financing has been considered in previous attorney general opinions. We begin with Opinion MW-337. *See* Tex. Att'y Gen. Op. No. MW-337 (1981). Opinion MW-337 concluded that a statute authorizing a municipal tax increment scheme was invalid under the equal and uniform requirement absent an enabling constitutional amendment. *See id.* at 5. The opinion observed that because the tax increment revenue was dedicated to the reinvestment zone, it was not available for the general support of the municipality. *Id.* at 4–5. Opinion MW-337 distinguished the impact on property inside the reinvestment zone from the impact on property outside the reinvestment zone: "[A] parcel of property located in the tax incremental [zone] (if its value has been enhanced) will not pay the same amount or ratio of taxes for *the general support of the city* that will be paid by a parcel of equal value located outside the [zone]." *Id.* at 5.

Subsequent to Opinion MW-337, the voters adopted article VIII, section 1-g(b) of the Texas Constitution, which authorizes cities and towns to engage in tax increment financing. TEX. CONST. art. VIII, § 1-g(b); *see* Tex. Att'y Gen. Op. Nos. JC-0152 (1999) at 5 (characterizing section 1-g(b) as an exception to the equal and uniform requirement), JC-0141 (1999) at 3 (same). A proposed constitutional amendment to grant similar authority to counties was defeated by the voters in 2011. *See* Tex. Att'y Gen. Op. No. GA-0981 (2012) at 3 (noting rejection).

Opinion GA-0981 examined a similar provision, section 222.107 of the Transportation Code, which authorizes a county to create a transportation reinvestment zone ("TRZ") and to issue bonds to pay the costs of TRZ transportation projects. *See* Tex. Att'y Gen. Op. No. GA-0981 (2012) at 1; TEX. TRANSP. CODE ANN. § 222.107(c) (West Supp. 2013). As considered in the opinion, section 222.107 authorized a county to use the tax increment derived from the TRZ to secure the bonds. Tex. Att'y Gen. Op. No. GA-0981 (2012) at 1. This office concluded that a "county's issuance of tax increment financing bonds secured by a pledge of the county's ad valorem tax increment would be subject to constitutional challenge as violating the equal and uniform taxation requirements . . . of the Texas Constitution." *Id.* at 3. Key to the determination of the disparate tax treatment under the equal and uniform provision in both opinions was the fact that the tax revenue from a portion of the value of property within the zone was diverted from the general support of the city or county due to the pledge of the tax increment.

As article VIII, section 1-g(b) remedied the equal and uniform concern for only cities and towns, a dispositive issue in Opinion GA-0981 was the fact that article VIII, section 1-g(b) did not include counties. *See id.* at 2 ("The . . . amendment . . . did not extend the Legislature's enabling authority to counties."). We conclude, as we did in Opinion GA-0981, that absent a constitutional amendment, section 222.1071's authorization for counties to pledge tax increments to the CETRZ could be subject to challenge under the equal and uniform provision.

Our conclusion is not altered by the fact that section 222.1071 authorizes a county to pledge the tax increment to a road utility district. *See* TEX. TRANSP. CODE ANN. §§ 222.1071(i)(5) (West Supp. 2013) (authorizing a county to pledge money in the tax increment account to a road utility district), 222.1071(n) (authorizing creation of road utility district with the same boundaries as the CETRZ); Request Letter at 2. Pledging the tax increment to another entity for use in the CETRZ does not change the fact that the tax increment is dedicated to a use other than the general support of the county. Your request letter suggests that the constitutional infirmity in section 222.107, at issue in Opinion GA-0981, was the fact that the tax increment secured county-issued bonds. *See* Request Letter at 2; *see also* Brief from James P. Allison, Cnty. Judges & Comm'rs Ass'n at 3–4 (Mar. 14, 2014) (on file with Op. Comm.) (asserting that subsection 222.1071(j) was enacted to address constitutional concern about county tax increments being used to service bond debt discussed in Opinion GA-0953).[3] Concern about a county's issuance of bonds misconstrues Opinion GA-0981. The issue in Opinion GA-0981 was the tax disparity caused by the pledge of the tax increment to the TRZ: the bonds were merely the authorized financing method. *Cf.* Tex. Att'y Gen. Op. No. GA-0514 (2007) at 7 (recognizing in municipal context that tax increment reinvestment zone improvements can be "financed with bond or note proceeds or by some other method"). Neither the prohibition of the use of bonds nor the involvement of a road utility district remedies the potential constitutional infirmity here because neither resolves the disparity between the tax treatment of property located in the CETRZ and property located outside of the CETRZ.[4]

In your remaining query, you ask in essence whether a county may fund the tax increment account with additional money from the county's general revenues. Request Letter at 2. A county has only that power expressly granted or necessarily implied therefrom. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). Subsection 222.1071(h) expressly provides that a county "may[,] from taxes collected on property in a zone, pay into the tax increment account for the zone an amount equal to the tax increment produced by the county less any amounts" specified. TEX. TRANSP. CODE ANN. § 222.1071(h) (West Supp. 2013). In this section, the Legislature's specified method of funding a CETRZ does not include funds from a county's general revenue. Moreover, while county revenue may be spent for a county public purpose, committing general revenue beyond a year is unconstitutional debt. *See* TEX. CONST. art. XI, § 7; *Stevenson v. Blake*, 113 S.W.2d 525, 527 (Tex. 1938) (defining "debt" by reference to satisfaction of pecuniary obligations "out of the current revenues for the year"). Accordingly, a county creating a CETRZ under section 222.1071 may not place county general revenue funds into the tax increment account.

---

[3]*See* Tex. Att'y Gen. Op. No. GA-0953 (2012) at 3; Tex. Att'y Gen. Op. No. GA-0981 (2012) at 2 n.2.

[4]Unlike section 222.107, section 222.1071 does not authorize a county to abate ad valorem taxes on property in the zone or authorize a conterminous road utility district to impose its own taxes in an amount equal to the abated tax. *Cf.* TEX. TRANSP. CODE ANN. § 222.107(h)(2)–(3), (h-1), (i), (j) (West Supp. 2013).

### S U M M A R Y

A county's use of tax increment financing to fund transportation projects in a county energy transportation reinvestment zone could be subject to challenge under the equal and uniform taxation requirement in article VIII, section 1(a) of the Texas Constitution.

A county creating a county energy transportation reinvestment zone under section 222.1071 of the Transportation Code may not place general revenue funds into the tax increment account.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee