

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-21-00042-CV

**CITY OF FLORESVILLE, TEXAS**, and Marissa Ximenez, Gloria E. Martinez, Juan Ortiz,
Gloria Morales Cantu, Monica Veliz, and Jade Jimenez, in their official capacities,
Appellants

v.

Nick **NISSEN**, David Johns, and Paul W. Sack,
Appellees

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CVW-19-00897
Honorable Lynn Ellison, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: June 29, 2022

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

This appeal arises out of the City of Floresville's decision to rescind its 2011 resolution, which resulted in the date of municipal elections being moved from November to May. Appellants appeal from the trial court's order granting summary judgment in favor of appellees and declaring the City's action void. Because we hold the City's action did not violate the Texas Election Code, we reverse the trial court's order.

**BACKGROUND**

The City of Floresville is a home-rule city, which is governed by its charter and state law. Its charter provides that the "general City election shall be held annually each spring election date as designated by the Texas Election Code between the hours of 7:00 a.m. and 7:00 p.m. at which time the officers will be elected to fill those offices which become vacant that year." FLORESVILLE, TEX., CITY CHARTER, § 5.01 (2009).

On September 8, 2011, by resolution, the Floresville City Council changed the date of the spring municipal elections to correspond with the federal and state elections in November pursuant to section 41.0052(c) of the Texas Election Code. *See City of Floresville v. Gonzalez-Dippel*, No. 04-20-00070-CV, 2020 WL 4606902, at *1 (Tex. App.—San Antonio Aug. 12, 2020, no pet.).

Section 41.0052, titled "Changing General Election Date," provides the following:

(a) The governing body of a political subdivision, other than a county or municipal utility district, that holds its general election for officers *on a date other than the November uniform election date may, not later than December 31, 2016, change the date on which it holds its general election for officers to the November uniform election date. . . .*

(c) *A home-rule city may implement the change authorized by Subsection (a)* or provide for the election of all members of the governing body at the same election through the adoption of a resolution. The change contained in the *resolution supersedes a city charter provision that requires a different general election date* or that requires the terms of members of the governing body to be staggered. . . .

TEX. ELEC. CODE § 41.0052(a), (c) (emphasis added). Thus, the City by adopting the resolution superseded its charter provision regarding election dates. Instead of being held in the spring, municipal elections in Floresville were held in November.

On July 17, 2019, the city council passed Resolution No. 2019-014, which repealed the resolution passed on September 8, 2011, stating that the city council "intends to follow The City of Floresville Home Rule Charter" and thus the "next election" would "be held in the spring 2020,

and every spring thereafter." Appellees then sued the City, the council members, and the City's secretary in their official capacities (collectively "the City"), seeking a declaratory judgment that Resolution No. 2019-014 was passed in violation of the Texas Election Code. *See City of Floresville*, 2020 WL 4606902, at \*1. Appellees also sought a temporary and permanent injunction. *Id*. In response, the City filed a "General Denial and Plea to the Jurisdiction," which requested attorney's fees and costs. The trial court granted appellees' request for a temporary injunction, declared the 2019 resolution void, declared council places 3, 4, and 5 vacated, and ordered the City to hold a special election. *Id*. The trial court also denied the City's plea to the jurisdiction. *Id*. The City then filed an interlocutory appeal. *Id*.

On August 20, 2020, this court reversed the trial court's order in part and affirmed in part. *Id*. This court reversed the trial court's order granting appellees' request for a temporary injunction and dissolved the temporary injunction in its entirety. *Id*. at \*4-5. Further, this court remanded the cause for proceedings on whether the election date change violated the Texas Election Code. *Id*. at \*5.

On remand, appellees moved for summary judgment on the issue of whether the move of the election date from November to spring violated the election code. After considering the motion and the City's response, the trial court granted summary judgment in favor of appellees, declaring the City's action "void and of no effect" because it was "passed in violation of the Texas Election Code." The trial court ordered that the "City's regular municipal elections shall remain on the November general election date" and that "a special election be held by the City of Floresville on May 4, 2021, for City Council Places 3, 4, and 5." The trial court permanently enjoined the City "from holding a general election in the May 2021 election cycle." The trial court also ordered that its judgment was "superseded unless the plaintiffs [appellees] provide to the district clerk or registry of the court a counter-supersedeas bond of $10,000.00 by March 24, 2021." Finally, the

trial court ordered that "the order on a special election" was stayed pending appeal. The City appealed.

## DISCUSSION

On appeal, the City argues that the passing of Resolution No. 2019-014, which repealed the resolution passed on September 8, 2011 and resulted in the election date being moved from November to spring, was not in violation of the Texas Election Code. Thus, it argues the trial court erred in granting summary judgment. In contrast, appellees argue that section 41.0052(a) of the Texas Election Code limited the ability of the City to effect a change in its election date from November to spring. Accordingly, we must consider whether section 41.0052(a) limited the ability of the City to pass Resolution 2019-014.

We review a trial court's grant of summary judgment de novo. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015). Further, this appeal involves interpretation of the Texas Election Code. Statutory construction is a legal question that we review de novo. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *Id*. (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). "We begin by examining the plain meaning of the statute's language." *Id*. "If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids." *Id*. (citation omitted).

The City emphasizes that it is a home-rule municipality and thus possesses the "full power of local self-government." *See* TEX. LOC. GOV'T CODE § 51.072(a) (providing that a home-rule municipality "has full power of local self-government"). Indeed, the only limitation on this authority given to home-rule municipalities is the Texas Constitution, which provides that home-rule city ordinances must not "contain any provision inconsistent with the Constitution of the State,

or of the general laws enacted by the Legislature of this State." *See* TEX. CONST. art. XI, § 5(a) ("[N]o charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."). Accordingly, home-rule cities have all power of self-government not limited by the constitution or state law. *See id*. They need not look to the Legislature for authority to act, but only need to consider whether the Legislature has specifically withdrawn their authority to act. *See id*. The supreme court has explained that in limiting the power of home-rule cities, the Legislature's intent must "appear with unmistakable clarity." *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975) (citation omitted).

Section 41.0052(a) limits the ability of certain political subdivisions to move their general election date from May to November:

> **§ 41.0052. Changing General Election Date**
>
> (a) The governing body of a political subdivision, other than a county or municipal utility district, that holds its general election for officers on a date other than the November uniform election date may, not later than December 31, 2016, change the date on which it holds its general election for officers to the November uniform election date.
>
> (a-1) Expired.
>
> (a-2) Expired.
>
> (b) A governing body changing an election date under this section shall adjust the terms of office to conform to the new election date.
>
> (c) A home-rule city may implement the change authorized by Subsection (a) or provide for the election of all members of the governing body at the same election through the adoption of a resolution. The change contained in the resolution supersedes a city charter provision that requires a different general election date or that requires the terms of members of the governing body to be staggered.

>   (d) The holdover of a member of a governing body of a city in accordance with Section 17, Article XVI, Texas Constitution, so that a term of office may be conformed to a new election date chosen under this section does not constitute a vacancy for purposes of Section 11(b), Article XI, Texas Constitution.
>
>   (e) The governing body of a newly incorporated city may, not later than the second anniversary of the date of incorporation, change the date on which it holds its general election for officers to another authorized uniform election date.

TEX. ELEC. CODE § 41.0052. The plain language of subsection (a) permits a political subdivision that held its elections on a date other than "November uniform election date" to change its election date to "the November uniform election date" so long as it did so "not later than December 31, 2016." Subsection (c) allows home-rule cities to enact this change through a resolution, even if such a change conflicted with its city charter, by explicitly stating a change contained in such a resolution would supersede a conflicting city charter provision. However, pursuant to the plain language of section 41.0052, home-rule cities were not permitted to change their general election date to the November uniform election date after December 31, 2016.

The City emphasizes that while section 41.0052(a) limited the ability of certain political subdivisions to move their general election date from May to November, "[t]here is no other limitation, temporal or otherwise, against a political subdivision moving from November to May." Accordingly, as the City is a home-rule with the full power of local self-government, it was free to change its election date from November to May. Section 41.0052 clearly and unambiguously prohibits certain political subdivisions from moving their election date to November. *See* TEX. ELEC. CODE § 41.0052(a). However, in considering the plain language of section 41.0052(a), it makes no other limitations on a home-rule city. Accordingly, the City was free to pass Resolution No. 2019-014, which resulted in the election date being moved from November to spring.

Finally, we note that in support of its argument that the City violated section 41.0052 by passing Resolution No. 2019-014, appellees cite a 2005 Attorney General Opinion that interpreted a previous version of section 41.0052. *See* Tex. Att'y Gen. Op. No. GA-0342 (2005). However, that Attorney General Opinion is not binding on this court. *See In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011) (stating that attorney general opinions are persuasive authority and not binding on courts). In applying our de novo review as stated above, we hold the trial court erred in granting summary judgment in favor of appellees and declaring Resolution No. 2019-014 void.[1]

## CONCLUSION

Because the City, as a home-rule city, had the authority to effect a change in its election date from November to spring, and because nothing in section 41.0052 limited its authority to effect such a change, we reverse the trial court's order and render judgment that appellees take nothing on their claims against the City. We remand this cause for the trial court to consider the City's request for attorney's fees and costs.

Liza A. Rodriguez, Justice

---

[1]We note that although the City in its brief brought two other issues, it concedes in its reply brief that those two issues are now moot and not before this court.