

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 25, 2025

Mr. Steven Daughety
Cherokee County Auditor
135 South Main, 3rd Floor
Rusk, Texas 75785

    **Opinion No. KP-0495**

    Re: Authorities and obligations regarding phone-card sales at a county jail (RQ-0570-KP)

Dear Mr. Daughety:

You ask a series of questions related to Cherokee County's provision of phone services to county jail inmates.[1] You tell us that the county jail's phone services and commissary operations are delivered by different outside providers by contract. Request Letter at 1. You explain that inmates' phone services were previously delivered through a "PIN debit system," in which the resulting revenue was placed in the County's general fund. *Id.* But in January 2024, the Sheriff notified your "office that the jail would be transitioning to phone card sales in place of phone PIN debit time," and the corresponding revenue from "these phone cards would be placed in the [c]ommissary account." *Id.*

On this backdrop, you first ask about the proper location for the deposit of phone card revenues where "the ordering, fulfillment, and fund allocation for phone card transactions is distinct and separate from that of commissary transactions." *Id.* at 2. You next ask about the parameters of placing phone card revenues "in the [c]ommissary profit account" and whether "the Sheriff [may] have a second, separate operation for phone cards sales" where the revenue is treated as commissary proceeds.[2] *Id.* Finally, you ask whether the Commissioners Court's jail and contracting authority authorizes it to "reinstate the PIN debit system" or if the "selection of phone service methods solely lie with the Sheriff as keeper of the jail." *Id.*

---

[1] *See* Letter from Mr. Steven Daughety, Cherokee Cnty. Auditor, to Hon. Ken Paxton, Tex. Att'y Gen. at 2 (Nov. 1, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0570KP.pdf ("Request Letter").

[2] We appreciate the background you provide regarding the purchase of phone cards from commissary proceeds but do not understand you to ask whether commissary proceeds may be used to purchase phone cards. *Id.* at 2 n.1. That question involves fact issues that are beyond the scope of this opinion, Tex. Att'y Gen. Op. No. KP-0159 (2017) at 1, and we offer no comment on this issue.

**County jails must provide for inmate telephone and commissary privileges.**

We begin by providing background on the telephone and commissary privileges that county jails are obligated to provide. County jails must comply with the minimum standards established by the Legislature in Local Government Code Chapter 351, subchapter A, as well as the "minimum standards and the rules and procedures [set by] the Commission on Jail Standards." TEX. LOC. GOV'T CODE § 351.002. Relevant here, the Commission's rules require jail facilities to implement a telephone and commissary plan. *See* 37 TEX. ADMIN. CODE §§ 291.1, .3 (addressing both, respectively).

Both plans concern privileges that must be provided to inmates. The inmate telephone plan is a "written plan[] . . . governing the availability and use of inmate telephones" that must satisfy several requirements set out by the Commission. *Id.* § 291.1. In relevant part, facilities must provide for "reasonable access" of both local and long-distance telephone services that "may be on a prepaid or collect basis." *Id.* § 291.1(2). After booking, facilities also must provide telephone access "on a prepaid or collect basis" and provide a "free telephone . . . for local calls" for certain inmates. *Id.* § 291.1(1). The inmate commissary plan is a "written plan[] . . . governing the availability and use of an inmate commissary which allows for the purchase of hygiene items and sundries," with various requirements as set out by the Commission. *Id.* § 291.3; *see also* Tex. Att'y Gen. Op. No. DM-19 (1991) at 1–2 (describing a commissary as providing "toilet articles and other personal items to inmates").

Though county jails must provide both privileges, telephone and commissary privileges are separate. *See, e.g.*, Tex. Att'y Gen. Op. No. DM-19 (1991) at 2–3 (noting that the "categorization" of "[t]elephone privileges and commissary privileges" indicates that the term "commissary" does not include "pay telephones"); *see also, e.g.*, Tex. Att'y Gen. LO-96-032 (1996) at 3 (reasoning that the Legislature adopted Section 351.0415 "based on the distinction between telephone and commissary privileges" thereby preventing the Commission from "includ[ing] telephone service within commissary services"). Indeed, the separate treatment of these two privileges is recognized by the Commission's treatment of the privileges as separate rules. *See* 37 TEX. ADMIN. CODE §§ 291.1, .3. And the exercise of each of these inmate privileges may also generate revenue. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-0814 (2010) at 2, 4 (referring to revenue from the commissary and telephone services).

**The separate treatment of inmate telephone and commissary privileges creates two sources of phone revenue that are deposited in different funds and could result in phone services and items offered under both privileges.**

Your first two questions concern the parameters of where to deposit the phone cards' revenue, focusing on when the "phone card revenue [should] go to the general fund or commissary profit account." Request Letter at 2. This requires us to consider the "nature of the particular funds," Tex. Att'y Gen. Op. No. KP-0019 (2015) at 2, and consider the "source" of the revenue itself, Tex. Att'y Gen. Op. No. KP-0079 (2016) at 3. As you signal, the possible "sources" of phone cards' revenue relevant here are from the exercise of either telephone privileges or commissary privileges. *See* Request Letter at 1.

In general, the county treasurer receives "all money belonging to the county from whatever source it may be derived." TEX. LOC. GOV'T CODE § 113.003. County officers who collect "fees, commissions, funds, and other money belonging to a county shall" deposit the money with the county treasurer, who then "deposit[s] the money in the county depository in the proper fund to the credit of the person or department collecting the money." *Id.* § 113.021(a)–(b). But not all funds held by a county official in his or her official capacity are funds "belonging to the county." Section 351.0415 of the Local Government Code, for example, authorizes a county sheriff "or the sheriff's designee" to operate the "commissary for the use of the inmates committed to the county jail." *Id.* § 351.0415(a). As part of this authority, the sheriff or sheriff's designee has "exclusive control of the commissary funds"[3] and "maintain[s] commissary accounts" related thereto. *Id.* § 351.0415(b)(1)–(2); *see also* Tex. Att'y Gen. Op. No. JS-0005 (2023) at 3 (explaining that exclusive control means these individuals have "sole authority . . . to direct and regulate the commissary funds"). Thus while commissary proceeds generated under Section 351.0415 are not funds "belonging to the county" and would not be properly deposited with the county treasurer, Tex. Att'y Gen. Op. No. GA-0791 (2010) at 3, inmate telephone privileges fall outside the scope of Section 351.0415 and corresponding revenue would be deposited with the county treasurer, *see, e.g.*, Tex. Att'y Gen. Op. Nos. KP-0295 (2020) at 3 (concluding that "revenue derived from money allocated from an inmate trust fund account to a phone service provider's PIN debit account must be credited to the general fund"), GA-0059 (2003) at 3 (concluding that "proceeds generated from the inmate telephone contract . . . are county funds").

Here, you acknowledge that the "phone card transactions [are] distinct and separate from [the] commissary transactions" and explain that these phone cards "are not available through the commissary order process." Request Letter at 1–2. You also note that the phone cards are "acquired directly" from the County's "phone provider," which is a different entity than the County's commissary provider. *Id.* at 2. As such, the resulting revenue must be deposited into the County's general fund because there can be no purchase *from* the commissary when the phone cards are not items sold *in* the commissary. Though we acknowledge a phone card could qualify as a "sundry" that can be sold in a commissary, Tex. Att'y Gen. Op. No. GA-0814 (2010) at 4, a commissary purchase does not turn on possibilities.[4] Commissary proceeds result from "a purchase from the commissary" or, stated differently, a purchase derived from the commissary operation. *See* Tex. Att'y Gen. Op. No. KP-0295 (2020) at 2 n.3, 3.

Even more, the phone cards you describe could not constitute a commissary purchase because they are separate from the provision of the commissary privilege and derive from inmate

---

[3] An exception presently exists for a sheriff's exclusive control in counties with a population of 2.1 million or more. *See* TEX. LOC. GOV'T CODE § 351.04155(a); *see also* TEX. GOV'T CODE § 311.005(3) (defining "population"). But Cherokee County does not qualify. U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/cherokeecountytexas (last visited Feb. 21, 2025) (reporting population of 50,412). Accordingly, we do not address the exception further.

[4] This office previously stated that "[r]evenue deriving from prepaid phone cards are part of the sheriff's commissary proceeds, which may be held outside the county treasury, whereas revenue from pay telephones and telephone services are not, in which case they are paid to the county treasurer." Tex. Att'y Gen. Op. No. KP-0079 (2016) at 3. This statement should not be read as classifying prepaid phone cards as commissary proceeds per se and instead sought to highlight the effect of the separate treatment of telephone and commissary privileges on telephone revenues. *See id.* (citing Tex. Att'y Gen. Op. No. GA-0814 (2010) at 3–5).

telephone privileges. For example, in Attorney General Opinion GA-0814, this office considered whether proceeds derived from a commissary's sale of prepaid phone cards to inmates were subject to the sheriff's exclusive control. Tex. Att'y Gen. Op. No. GA-0814 (2010) at 1. The opinion observed that the phone cards sold in the commissary lacked a "relevant basis for distinguishing" them from "other commissary items" where phone cards were sold "separate from the telephone service contract," and there was no suggestion the "phone cards would replace the telephone service contract[] or that inmates would always opt to use a prepaid phone card to obtain . . . telephone service." *Id.* at 4. An inmate also did not need to "procure" a phone card "to obtain telephone service for himself." *Id.* In other words, there was "no necessary correlation between the sale of a prepaid phone card and the provision of toll telephone service in a county jail." *Id.* Accordingly, revenues from phone cards purchased as a commissary item with no "correlation" with the provision of inmate telephone privileges are commissary proceeds. *See id.*

The situation you describe here contrasts with that in GA-0814, further highlighting the separate nature between inmate telephone and commissary privileges. We understand from the facts you provide that the phone cards, in addition to not being sold in the commissary, are offered to provide inmates their required telephone privileges. Request Letter at 1 (noting that the phone card replaced the PIN debit system previously in place). Thus, the phone cards you describe are also not considered a commissary purchase that generates commissary proceeds because they are necessarily correlated with the inmate telephone privilege. This further demonstrates that the revenues from the phone cards you describe must be deposited in the County's general fund.

This separation between inmate telephone and commissary privileges is key in addressing your question as to whether a sheriff may "have a second, separate operation for phone card sales," where the revenue would be kept in the "[c]ommissary profit account." *Id.* at 2. As discussed, phone cards purchased from the Sheriff's commissary operation would result in the Sheriff retaining the revenue as commissary proceeds, but purchases derived from the exercise of inmate telephone privileges would be deposited with the county treasury. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0295 (2020) at 2 n.3, 3. Thus, the separate treatment of telephone and commissary privileges could result in a situation where both privileges offer some telephone service or item. *E.g.*, Tex. Att'y Gen. Op. No. GA-0814 (2010) at 1, 4. Accordingly, if the phone cards are purchased as a commissary item with no "correlation" to the provision of inmate telephone privileges, a sheriff may retain the revenue as commissary proceeds. *Id.* at 4. This is so even if the County separately delivers the inmate telephone privileges by phone cards. *See, e.g., id.* at 1, 4.

**The Commissioners Court may select the method of providing telephone privileges to inmates so long as the method complies with the Commission's associated rule.**

We understand your last series of questions to concern whether the Commissioners Court or the Sheriff selects the "phone service method" used by the County to provide inmate telephone privileges. *See* Request Letter at 1–2. Accordingly, we look at the Commissioners Court's authority as applied to this privilege.

A commissioners court has the express powers granted to it by the Texas Constitution or the Legislature, as well as "the implied authority to exercise the power necessary to accomplish its assigned duty." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003); *see also* TEX. CONST. art. V, § 18(b). Relevant here, a commissioners court possesses sole authority to

"make contracts binding on the county," unless a statute provides otherwise. *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941). A sheriff, however, "has no authority to make contracts that are binding on the county, except where he [or she] is . . . authorized to do [so] by statute." *Id.* As discussed, the Commission's inmate telephone rule "requires that counties provide certain telephone services to inmates" that meet various requirements. Tex. Att'y Gen. Op. No. GA-1041 (2014) at 2; 37 TEX. ADMIN. CODE § 291.1; *see also supra* p. 2 (discussing some of the inmate telephone rule's requirements). Unlike Section 351.0415 for jail commissaries, the legislative directive requiring compliance with this Commission rule provides the Sheriff no authority to contract for this privilege. *Compare* TEX. LOC. GOV'T CODE § 351.002, *with id.* § 351.0415. Indeed, the "[S]heriff has no contracting authority regarding the provision of telephone services to jail inmates." Tex. Att'y Gen. LO-97-030 (1997) at 4, *modified on other grounds*, Tex. Att'y Gen. Op. No. GA-0059 (2003) at 3. That authority rests instead with the Commissioners Court. *Id.* The rule's silence as to a specific delivery method to provide the privilege means that the Commissioners Court has "broad discretion" in selecting the method when contracting for this privilege. *See* 37 TEX. ADMIN. CODE § 291.1; *Anderson*, 152 S.W.2d at 1085.

Not only does the Commissioners Court's contracting authority permit it to select the method in which inmate telephone privileges are delivered, but doing so is consistent with its jail authority. *See generally* TEX. LOC. GOV'T CODE §§ 351.001–.015 (concerning county jail facilities). "Although the daily operation of the county jail is vested with the sheriff, the commissioners' court does have general responsibilities in connection with the operation of the jail." *Pugh v. Rockwall Cnty.*, No. Civ.A. 3:98CV2142P, 2000 WL 351389, at *7 (N.D. Tex. Mar. 10, 2000) (mem. op.). Commissioners courts are responsible for providing "safe and suitable jails for the county," TEX. LOC. GOV'T CODE § 351.001(a), that must meet various requirements, *see generally id.* §§ 351.002–.015. Part of this responsibility extends to providing a jail that complies with the Commission's inmate telephone rule. *Id.* § 351.002; *Pugh*, 2000 WL 351389, at *7 ("The commissioners' court must ensure that the jails within its county conform to the [Commission's] standards."). Again, the rule requires telephone privileges meeting various requirements be provided to inmates but does not dictate a specific method to deliver this privilege. *See* 37 TEX. ADMIN. CODE § 291.1. Instead, the delivery method falls within the Commissioners Court's "broad discretion." *See* Tex. Att'y Gen. Op. No. GA-1041 (2014) at 2 (noting that "the counties have 'broad discretion to accomplish [the] purpose'" of providing inmate telephone privileges (quoting *Anderson*, 152 S.W.2d at 1085)). Thus, the Commissioners Court's authority to provide safe and suitable jails includes selecting the delivery method of those privileges.

Accordingly, the Commissioners Court may reinstate the PIN debit system, through its contracting and jail authority, so long as the chosen delivery method complies with the Commission's rule requirements regarding telephone privileges.[5]

---

[5] Though beyond the scope of this opinion, we note that federal regulations—like those promulgated by the Federal Communications Commission, which are currently subject to pending litigation—may impose additional requirements that affect the amount of revenue generated from inmate telephone privileges offered in county jails. *See, e.g.*, 47 C.F.R. §§ 64.6010 (concerning "Incarcerated People's Communications Service rate caps" for interstate, intrastate, and international audio services), .6030 (concerning "Inmate Calling Services Interim Rate Caps" for interstate calls); *see also, e.g.*, Tex. Att'y Gen. Op. No. GA-1041 (2014) at 2–3 (recognizing FCC rate caps may apply to county jail telephone services).

## S U M M A R Y

Revenue from phone cards sales derived from the exercise of inmate telephone privileges provided under the Texas Commission on Jail Standards' rule concerning inmate telephone plans must be deposited in the county's general fund. Revenue derived from the purchase of phone cards as a jail commissary item, bearing no correlation to the provision of inmate telephone privileges, are commissary funds under the exclusive control of the sheriff. It follows that phone card revenue must be deposited in the general fund where the ordering, fulfillment, and fund allocation of phone cards are separate from the commissary operation. The separate treatment of inmate commissary and telephone privileges could result in a situation where some telephone service or item is offered under both privileges.

The Cherokee County Commissioners Court may reinstate the PIN debit system, through its contracting and jail authority, so long as the chosen method complies with the requirements in the Commission's rule concerning inmate telephone privileges.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMANDA K. ROMENESKO
Assistant Attorney General, Opinion Committee