**Opinion issued July 20, 2023**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-22-00543-CV

—————————————

**VSMSQ STRUCTURAL ENGINEERS, LLC, STEPHAN P. VOSS, RORY A. STARLING, MARTIN R. MAINGOT, AND JAY MARTIN, Appellants**

**V.**

**STRUCTURAL CONSULTANTS ASSOCIATES, INC., Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-19896**

---

## O P I N I O N

Appellants—VSMSQ Structural Engineers, LLC (VSMsq), Stephan P. Voss,

Rory A. Starling, Martin R. Maingot, and Jay Martin—filed a motion under the

Texas Citizens Participation Act (TCPA)[1] to dismiss the common-law misappropriation claim filed against them by appellee Structural Consultants Associates, Inc. (SCA). In its response, SCA argued that, under the commercial-speech exemption, its misappropriation claim was exempt from the TCPA's protections. Appellants asserted that the artistic-work exception to the commercial-speech exemption applied, thereby excluding the misappropriation claim from the commercial-speech exemption.

The trial court signed an order denying Appellants' TCPA motion to dismiss, citing, inter alia, the commercial-speech exemption as a basis for the denial. Appellants filed this interlocutory appeal challenging the order.[2] Because SCA met its burden to show that the commercial-speech exemption applied to its misappropriation claim, and Appellants did not prove that the artistic-work exception applied, we affirm the trial court's order denying Appellants' TCPA motion to dismiss.

## Background

On April 22, 2022, SCA filed suit against Appellants. In its original petition, SCA described itself as "a structural engineering firm located in Sugar Land, Texas,

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

[2]    TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (permitting interlocutory appeal of order denying TCPA motion to dismiss).

who has become an industry leader in structural design and engineering services for both national and international clients." Appellants Voss, Starling, Maingot, and Martin were previously employed by SCA. Voss, Martin, and Maingot were hired by SCA as engineers, and Starling was hired as a drafter. SCA later appointed Voss and Martin to be executives of SCA. Martin resigned from SCA in March 2020, and Voss, Starling, Maingot resigned in March 2022.

SCA alleged that it discovered that Voss, Starling, Maingot, and Martin had formed VSMsq—an engineering services company—in January 2022, before Voss, Starling, and Maingot resigned. SCA described VSMsq as "a market competitor."

SCA asserted that Voss, Starling, and Maingot took "highly valuable confidential and proprietary information" from SCA to use for VSMsq's benefit. SCA alleged that Voss, Starling, and Maingot had met with SCA's clients while employed by SCA to secure business for VSMsq. SCA claimed that Voss, Starling, and Maingot had "approached dozens of SCA employees to lure them away from [SCA] by making outlandish and fraudulent misrepresentations that SCA was going [out of business]." SCA further alleged that, shortly after Voss, Starling, and Maingot resigned, SCA learned that its "most consistent client, Hanover Company, had entered into agreements with Voss and VSMsq whereby Hanover Company hired VSMsq to perform engineering consulting services." SCA alleged that the

"timing of these agreements show[ed] that negotiations between [Appellants] and Hanover had occurred prior to" the resignations of Voss, Starling, and Maingot.

According to SCA, its discovery of the Hanover agreements led it to VSMsq's website. There, SCA saw that Appellants were posting images of buildings that had been engineered by SCA. SCA claimed that Appellants were using the images of the buildings "to promote [VSMsq's] engineering services on its website: VSMsq.com." SCA included a screenshot from VSMsq's website in its petition. The screenshot showed an image of a building engineered by SCA with the label "Project Types Engineered by VSM[sq]." SCA asserted that Appellants were representing that the buildings depicted in the image had been engineered by VSMsq. SCA alleged that "VSMsq's use of the above referenced building projects was done with the intention of deceiving the public and potential clients into falsely believing that Defendant VSMsq was the entity who developed and created the building projects." SCA claimed that "VSMsq ha[d] gained special advantage in its competition with [SCA] through the use of these building projects and engineering design[s], because Defendant VSMsq [was] burdened with little or none of the expense incurred by Plaintiff SCA in creating the respective building plans." SCA asserted that "VSMsq knew that these building projects were created by Plaintiff SCA at the time the images were placed on [VSMsq's] website [because] Defendants Voss, Starling,

4

Maingot, and Martin, the owners and agents of Defendant VSMsq, worked on the above referenced building projects for SCA during their employment with [SCA]."

SCA asserted 11 causes of action against Appellants. Of those, the only cause of action relevant here is SCA's common-law misappropriation claim.[3] The misappropriation claim arose from Appellants' posting of the images of buildings engineered by SCA on VSMsq's website for the purpose of promoting Appellants' engineering services. SCA asserted that Appellants had "used [SCA's] building projects knowingly and willfully, with the intent to mislead the public and cause confusion and mistake and have actively deceived customers in doing so." SCA alleged that Appellants "specifically attempted to pass off [SCA's] services as its own" and that those "actions are known as 'reverse-passing off' and constitute[] unfair competition." SCA claimed that, as a result of those actions, it had "incurred and will continue to incur substantial monetary damages in the form of lost business, profit, and revenue." SCA also sought injunctive relief.

On May 6, 2022, Appellants filed their "Original Answer and Counterclaims." They generally denied SCA's claims, raised several affirmative defenses, and counterclaimed for back-wages and unpaid vacation.

---

[3] SCA also asserted a cause of action for "statutory misappropriation of trade secret and confidential information," but any reference to SCA's misappropriation cause of action or claim refers to its common-law misappropriation cause of action.

5

On May 11, 2022, SCA filed an application for a temporary restraining order (TRO) based on its common-law misappropriation claim. SCA asked the trial court "to issue a temporary restraining order ordering Defendant VSMsq to remove references of SCA projects, products, and services from VSMsq.com." The next day, the parties entered into a Rule 11 agreement in which SCA agreed to forgo the TRO hearing, and Appellants agreed "to remove any and all depictions of, or references to, the SCA Building Projects from VSMsq.com within forty-eight (48) hours of the execution of this Rule 11 Agreement."

On May 27, 2022, Appellants filed a TCPA motion to dismiss SCA's common-law misappropriation cause of action. Appellants asserted that SCA's "claim for common law misappropriation should be dismissed because it is based on or is in response to defendants' exercise of their right of free speech." They argued that the TCPA applied to the misappropriation claim because it was "based on or [was] in response to a communication made by [them] in connection with a matter of public concern." Appellants further asserted that SCA could not establish a prima facie case for each essential element of SCA's common-law misappropriation claim.

On June 21, 2022, SCA filed its first amended petition. Although SCA added some additional language, the operative facts regarding the common-law misappropriation claim remained the same in the amended pleading.

In support of the first amended petition, SCA attached the affidavit of its Chief Executive Officer, Mark Shepard. That same day, SCA filed its response to Appellants' TCPA motion. Among its supporting evidence, SCA offered its first amended petition and Shepard's affidavit.

SCA asserted that its misappropriation claim was exempt from the TCPA's application based on several statutory exemptions, including the commercial-speech exemption. SCA also asserted that Appellants had failed to show that the TCPA applied to its misappropriation claim because Appellants' "pursuit of their new business [was] not a matter of . . . public concern." And SCA claimed that Appellants' motion should be denied because SCA offered clear and specific evidence to establish a prima facie case for each element of its misappropriation claim.

At the hearing on the TCPA motion, Appellants continued to assert that the TCPA applied to SCA's common-law misappropriation claim because the claim was based on or in response to the exercise of their free-speech rights. They argued that the subject matter of the claim was a matter of public concern. They also asserted that the commercial-speech exemption did not apply based on the artistic-work exception to that exemption found in TCPA subsection 27.010(b)(1). Appellants pointed out that SCA had mistakenly argued in its response that the artistic-work exception was an exemption to the TCPA rather than an exception to the exemption.

7

The trial court denied Appellants' TCPA motion to dismiss SCA's common-law misappropriation claim. In its order, the trial court stated that, "[a]lthough [SCA] did not present prima facie evidence of its common law misappropriation claim," the court found that the TCPA did not apply based on the commercial-speech exemption. The trial court also indicated that Appellants had not met the public-concern requirement necessary to establish that the misappropriation claim had been based on or in response to the exercise if their free-speech rights.

This interlocutory appeal followed. Appellants raise three issues challenging the trial court's order denying their TCPA dismissal motion.

**Denial of TCPA Motion**

Because it is dispositive, we begin with Appellants' second issue in which they contend that "SCA fail[ed] to show that its common law misappropriation claim is exempt from the TCPA" under the commercial-speech exemption.

**A.    Standard of Review**

The TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). "That protection comes in the form of a special motion to dismiss . . . for any suit that appears to stifle

the defendant's exercise of those rights." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018) (internal quotation marks omitted).

We review de novo the denial of a TCPA motion to dismiss. *Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). We likewise interpret the TCPA and decide whether it applies to a legal action de novo. *See Youngkin*, 546 S.W.3d at 680. When determining "whether a legal action is subject to or should be dismissed" under the TCPA, we "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). We view the pleadings and evidence in the light most favorable to the nonmovant. *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

## B.    The Commercial-Speech Exemption Applies

The TCPA provides a mechanism for dismissal of a "legal action" that is "based on or is in response to" a party's exercise of one of the rights listed in TCPA section 27.005(b), including the party's exercise of its right of free speech. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)(1)(A). A party may also file a motion to dismiss a legal action "aris[ing] from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)," which includes subsection 27.010(b)(1), a provision discussed below. *See id.* § 27.003(a).

The TCPA defines "legal action" to include a cause of action. *Id.* § 27.001(6).

However, the TCPA expressly exempts qualifying commercial speech from its

application. Specifically, the TCPA does not apply to

> a legal action brought against a person primarily engaged in the
> business of selling or leasing goods or services, if the statement or
> conduct arises out of the sale or lease of goods, services, or an insurance
> product, insurance services, or a commercial transaction in which the
> intended audience is an actual or potential buyer or customer[.]

*Id.* § 27.010(a)(2).

The Supreme Court of Texas has identified four elements that must be met for

the commercial-speech exemption to apply:

(1) the defendant was primarily engaged in the business of selling or
leasing goods or services;

(2) the defendant made the statement or engaged in the conduct on
which the claim is based in its capacity as a seller or lessor of those
goods and services;

(3) the statement or conduct at issue arose out of a commercial
transaction involving the kind of goods or services that the
defendant provides; and

(4) the intended audience of the statement or conduct were actual or
potential customers of the defendant for the kind of goods or
services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018).

As the party asserting the commercial-speech exemption, SCA had the burden

to prove the exemption's application. *See Schmidt v. Crawford*, 584 S.W.3d 640,

653 (Tex. App.—Houston [1st Dist.] 2019, no pet.). If the commercial-speech

10

exemption applied, the trial court "ha[d] no choice but to deny the motion." *See N. Cypress Med. Ctr. Operating Co. GP v. Norvil*, 580 S.W.3d 280, 284 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The trial court stated in its order that the commercial-speech exemption was a basis for its denial of the motion.

Regarding the first *Castleman* element, the TCPA record showed that Appellants were primarily engaged in the business of selling or leasing goods or services, namely, engineering services. *See Castleman*, 546 S.W.3d at 688. In his affidavit, Shepard testified that he had "discovered that Defendant Stephan P. Voss, Defendant Rory A. Starling, Defendant Martin R. Maingot, and Defendant Jay Martin had founded VSMsq, an engineering firm in competition with SCA," which Shepard described as structural engineering firm. "Notably, the exemption's plain text requires the defendant to be primarily engaged in the business of selling goods or services, not primarily engaged in the act of selling." *Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Because they were involved in the founding of VSMsq, and worked for the company, it is reasonable to conclude that Voss, Starling, Maingot, and Martin were also "primarily engaged" in VSMsq's business of providing engineering services. *See Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 212 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("[T]he exemption can apply even though the movant is just an employee."); *Rose*, 2019 WL

11

2588512, at *5 (concluding that "high-level executive of a company that primarily designs and sells manufactured items to customers is also 'primarily engaged' in that type of business").

The second *Castleman* element requires that Appellants engaged in the complained-of conduct in their capacity as sellers of VSMsq's services. *See Castleman*, 546 S.W.3d at 688. To determine whether Appellants engaged in the conduct in this capacity, we consider the context in which the conduct was performed. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 481 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd). In both its original and first amended petitions, SCA alleged that VSMsq, was a "market competitor," which had "used images of SCA building projects to promote the company's engineering services on its website: VSMsq.com." SCA alleged that Appellants had "intentionally used" the building projects on VSMsq's website "to deceive the public and potential clients into falsely believing that Defendant VSMsq was the entity who developed and created the building projects." Because the allegations concern Appellants' conduct in marketing their services and securing customers, we conclude Appellants engaged in the complained-of conduct as sellers of VSMsq's engineering services. *See Panton Inc. v. Bees360, Inc*., No. 01-20-00267-CV, 2021 WL 3868773, at *11 (Tex. App.—Houston [1st Dist.] Aug. 31, 2021, no pet.) (mem. op.) (determining that

second *Castleman* element was satisfied where defendants were marketing services allegedly using plaintiff's "confidential material" on defendants' company website).

The third *Castleman* element requires that the complained-of statement or conduct arise out of a commercial transaction involving the kind of goods or services the defendant provides. *See Castleman*, 546 S.W.3d at 688, 690; *see also Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.) (noting requirement that statement or conduct at issue "arose out of" commercial transaction means that it "results, issues, or proceeds" from sale or commercial transaction). As alleged by SCA in its pleadings, Appellants were "us[ing] images of SCA building projects to promote [VSMsq's] engineering services on [VSMsq's] website" for the purpose of obtaining customers and luring away SCA's customers. *See Panton*, 2021 WL 3868773, at *11 (determining that third *Castleman* element was met where pleadings alleged that defendants were "allegedly . . . using [plaintiff's] misappropriated confidential information as part of their marketing efforts to siphon off [plaintiff's] business for [defendants'] financial benefit"). These allegations sufficiently established that the complained-of conduct arose out of a commercial transaction involving the kind services Appellants provide, satisfying the third *Castleman* element. *See* 546 S.W.3d at 688; *see also Rose*, 2019 WL 2588512, at *6 (stating "commercial transaction" need not be

13

consummated and can include conduct or statements that merely propose commercial transaction).

The last element requires that "the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides." *Castleman*, 546 S.W.3d at 688. As mentioned, SCA alleged in its pleadings that Appellants used images of SCA's building projects on its website along with the caption "Project Types Engineered by VSM[sq]" to promote the company's engineering services. SCA also alleged that Appellants were targeting "potential clients" to make them falsely believe that VSMsq had "developed and created the building projects." SCA alleged that Appellants' use of the images had caused "consumers of [SCA's] services"—which were the same type of services offered by VSMsq—"to become confused." Thus, the TCPA record sufficiently established the last *Castleman* element—that the intended audience of the images of SCA's building projects on VSMsq's website were Appellants' actual or potential customers of its engineering services. *See id.*

On appeal, Appellants argue that the commercial-speech exemption does not exempt SCA's misappropriation claim from the TCPA's application because the TCPA applies to the claim pursuant to subsection 27.010(b)(1), which provides:

> (b) Notwithstanding [the commercial-speech exemption and two other listed exemptions], the [TCPA] applies to:

14

(1) a legal action against a person arising from any act of that person, whether public or private, related to the gathering, receiving, posting, or processing of information for communication to the public, whether or not the information is actually communicated to the public, for the creation, dissemination, exhibition, or advertisement or other similar promotion of a dramatic, literary, musical, political, journalistic, or otherwise artistic work, including audio-visual work regardless of the means of distribution, a motion picture, a television or radio program, or an article published in a newspaper, website, magazine, or other platform, no matter the method or extent of distribution[.]

TEX. CIV. PRAC. & REM. CODE § 27.010(b)(1). Appellants correctly assert that, when the TCPA applies to a legal action pursuant to subsection 27.010(b)(1), the commercial-speech exemption does not exempt the legal action from the TCPA's application. *See id.* In other words, subsection 27.010(b)(1) provides an exception—the artistic-work exception—to the commercial-speech exemption for "dramatic, literary, musical, political, journalistic, or otherwise artistic work" when the other elements of subsection 27.010(b)(1) are met.[4]

Appellants had the burden to show that the TCPA applied to SCA's common-law misappropriation claim pursuant to subsection 27.010(b)(1) and, thus, also had the burden to show that the artistic-work exception removed the claim from the commercial-speech exemption's reach. *See Welsh v. River Hollow Ass'n*, 654

---

[4] As mentioned above, a TCPA movant may meet its initial burden to show that the TCPA applies to the challenged legal action by proving that the legal action "arises from any act of that party in furtherance of the party's communication or conduct described by section 27.010(b)." *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

15

S.W.3d 505, 509 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (explaining that only movant bears burden to show TCPA applies). Although they did not assert in their dismissal motion that the TCPA applied to SCA's misappropriation claim based on subsection 27.010(b)(1), Appellants made that argument at the TCPA hearing. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018) (stating that raising argument regarding TCPA's applicability at hearing on TCPA motion sufficiently preserved that argument for appellate review). Appellants concomitantly argued that the misappropriation claim was excepted from the commercial-speech exemption based on subsection 27.010(b)(1).

As discussed, SCA's misappropriation claim arose from Appellants' conduct of posting images of buildings structurally engineered by SCA on VSMsq's website for the purpose advertising and promoting Appellants' engineering services. Appellants assert that, because they incorporated SCA's structural engineering designs, the buildings depicted in the images on VSMsq's website were "artistic works," as that term is used in subsection 27.010(b)(1).

Appellants point out that SCA raised subsection 27.010(b)(1) in its response to the dismissal motion. Misreading the statute, SCA had incorrectly argued in its response that subsection 27.010(b)(1) contained an exemption to the TCPA (rather than an exception to the exemption). In making this incorrect argument, SCA stated that "[t]he SCA building project engineering designs, and the buildings themselves,

16

[were] artistic works." On appeal, Appellants contend that "[s]uch statement is a judicial admission and conclusively establishes the issue."

"Assertions of fact, not plead[ed] in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (quoting *Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). Only assertions of fact can be judicially admitted. *Rayner v. Claxton*, 659 S.W.3d 223, 245 (Tex. App.—El Paso 2022, no pet.). "A party may not judicially admit a question of law." *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.); *see Rayner*, 659 S.W.3d at 246 (holding that duty of care was question of law that could not be judicially admitted).

Like all matters of statutory construction, whether the buildings structurally engineered by SCA depicted in the images on VSMsq's website qualify as "artistic works," as that term is used in subsection 27.010(b)(1), is a question of law, not a question of fact. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("Statutory construction is a question of law for the court to decide."); *see also Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 444 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ("Whether the TCPA applies is an issue of statutory interpretation . . . ."). Because SCA could not judicially admit a question of law,

17

SCA's statement that "[t]he SCA building project engineering designs, and the buildings themselves, [were] artistic works" was not a judicial admission.

The TCPA does not define the term "artistic work," and no Texas caselaw discusses its meaning. When the Legislature does not define a statutory term, we "use tools of statutory construction to determine its meaning." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Under the rules of construction, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

Subsection 27.010(b)(1)'s use of the modifier "otherwise" before the term "artistic work" invokes the *ejusdem generis* canon of construction, which limits the scope of the catchall language to the same class or category as the specific items that precede it. *See In re Millwork*, 631 S.W.3d 706, 712 (Tex. 2021) (citing *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015)). "In a similar fashion, the *noscitur a sociis* canon of construction provides that words must be construed in context to comport with the surrounding text." *Id.* at 212–13 (citing *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008)). Here, "otherwise artistic work" follows a list of specific types of artistic works, namely, "dramatic, literary, musical, political, [and] journalistic [works]." TEX. CIV. PRAC. & REM. CODE § 27.010(b)(1). Under the doctrine of *ejusdem generis*, we limit the application of the general phrase "otherwise artistic work" to the type of artistic work characterized

18

by "dramatic, literary, musical, political, [and] journalistic [works]." *See City of San Antonio*, 111 S.W.3d at 29.

We note that "art" may be defined as (1) a "[c]reative expression, or the product of creative expression" or as (2) "[a]n occupation or business that requires skill; a craft." *See* Art, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, the listed "dramatic, literary, musical, political, [and] journalistic [works]" are best characterized as creative expressions or products of creative expressions that convey or express information, messages, or ideas. This characterization is supported by the examples of specific artistic works listed in subsection 27.010(b)(1), namely, "audio-visual work . . . , a motion picture, a television or radio program, or an article published in a newspaper, website, magazine, or other platform." *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b)(1).

Appellants assert that "engineering has long been recognized to be an art form in addition to a scientific endeavor." But Appellants provided no definition or description of what the structural engineering here entailed or what was involved in the preparation of the structural engineering designs incorporated into the buildings depicted on VSMsq's website. We note that SCA's first amended petition states that SCA's "engineering designs" for the buildings depicted on VSMsq's website "specif[ied] the structural requirements necessary to implement the architectural design for the respective buildings." That description connotes no element of

creative expression. While structural engineering may be an art in the sense that it is an occupation that requires skill, and the engineering designs may have some artistic qualities, the record contains no indication that the buildings are "artistic works" in the sense that the engineering aspects of the buildings are of the same or similar character as "dramatic, literary, musical, political, [or] journalistic [works]."[5] *See id.*

\* \* \* \*

We conclude that SCA met its burden to show that the commercial-speech exemption applied to its common-law misappropriation claim. We also conclude that Appellants failed to meet their burden to show that the TCPA applied to the claim under subsection 27.010(b)(1) and thus failed to show that the artistic-work exception to the commercial-speech exemption applied. Accordingly, we hold that the trial court did not err in denying Appellants' motion to dismiss SCA's misappropriation claim.

---

[5] We note that California's anti-SLAPP statutes contain an artistic-work exception similar to the one found in subsection 27.010(b)(1). *See* CAL. CIV. PROC. CODE § 425.17(d)(2). In *City of Rocklin v. Legacy Family Adventures-Rocklin, LLC*, the California Court of Appeals for the Third Appellate District upheld the trial court's determination that a theme park was not an "artistic work" for purposes of that state's artistic-work exception. 303 Cal. Rptr. 3d 52, 68 (Cal. Ct. App. 2022). The trial court based its determination, in part, on the doctrine of *ejusdem generis. See id.* The Court of Appeals stated that a theme park "is not of the same or similar character" as dramatic, literary, musical, or political works. *Id.* "While [a theme park] may have artistic qualities, that does not make it an artistic work." *Id.* The court explained that, "while the parameters of what constitutes art may not be precisely clear, not everything can be called art." *Id.*

We overrule Appellants' second issue.[6]

## Conclusion

We affirm the order of the trial court denying Appellants' TCPA motion to dismiss SCA's common-law misappropriation claim.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

---

[6] Because the trial court properly denied the dismissal motion based on the commercial-speech exemption, we need not consider Appellants' two remaining issues challenging the order. *See* TEX. R. APP. P. 47.1.